*William R. Goldberg, Moses Kando, Ronald R. Gagnon,* for petitioners, appellants.

*Worrell and Hodge, Eldridge H. Henning, Jr.,* of counsel, for respondent, appellee.

242 A.2d 301.

LINCOLN PLASTIC PRODUCTS COMPANY *vs.* ZONING BOARD OF REVIEW OF THE TOWN OF LINCOLN.

MAY 31, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. These proceedings in certiorari, commenced on the authority of G. L. 1956, §45-24-20, seek to quash

a decision of the respondent board granting relief from minimum lot-line regulations. It appears from the records certified in compliance with the writ that Saylesville Development Co. and Marlen Realty Co., hereinafter called applicants, are the owners of lots 77 and 107, assessors plat 2, on Industrial Drive in the town of Lincoln. The property is located in an MG-0.5 general manufacturing zone.

It further appears that on lot 77 there presently exists a manufacturing plant, the dimensions of which are 120′ by 100′. The northern line of this building fronts on Industrial Drive and appears to abut it. Lot 107 abuts lot 77 to the west. The applicant proposes to build an additional plant partially on lot 107, but substantially three-fourths of the proposed building would be located on lot 77. Although not shown on the map introduced at the hearing before the board, a photostatic copy of which is in the record, there is a suggestion that applicants intend to run a private road between the existing and proposed buildings. This road would be tapered from 40′ to 30′ wide and run generally south from Industrial Drive to railroad tracks which abut lots 77 and 107 on the south. The proposed building would have a depth from north to south of 193′ and be 88′ in width.

Article IV of the applicable zoning ordinance requires a minimum front, rear and sideyard setback of 40′ and the existing building on lot 77 having been constructed prior to the enactment of the ordinance is a nonconforming deviation vis-a-vis Industrial Drive. It was partially to permit alignment of the front of the proposed new building with that of the existing structure which prompted applicants to apply to the board for relief from the minimum front yard requirements of article IV.

The application to the board and the statements of applicants' representative at the hearing held thereon, disclose that lot 107 on which the new building will be partially located has a width of 35.04′ and is abutted on the west by

land of instant petitioner. Further, locating the proposed building as desired by applicants will allow but 13′ between the west line of the proposed building and petitioner's property line. Thus, if constructed where applicants desire, the new building's northeast corner will set back but 1′ and the northwest corner but 5′ from the southern line of Industrial Drive and be but 13′ easterly of petitioner's property. This constitutes a deviation of from 39′ to 35′ on the north and 27′ on the west.

The applicants' representative offered no explanation as to why the deviation was requested, or indeed why any deviation was necessary to a reasonable enjoyment of the uses permitted in an MG-0.5 zone. He did state that the new building would be devoted to "* * * manufacturing purposes similar to the buildings that we have put up in the past." In this connection he stated, "Now, when I bought this property from the Saylesville Bleacheries, there was only one building on it which was the old machine shop and I have developed it now to the point of adding approximately 130,000 square feet with this new addition, a brand new manufacturing warehouse and storage building with a side track off of the present Moshassuck Valley side track which provides an access to the building on the west side which is up in the end of the Industrial Drive."

He also stated that it was applicants' intention to some day tie the existing and proposed building together as one manufacturing unit. This presumably would be accomplished by the construction of an overhead ramp, since as previously noted, applicants plan to run a road 37′ wide between the proposed and existing buildings. Furthermore, it would appear from the map in evidence that the distance between the two buildings tapers from about 40′ at the property line to about 37′ at the rear of the existing building so that, in effect, it is the maintaining of a road between the buildings that requires the new building to set back not more than 13′ from petitioner's property. Yet, in his

statement to the board, offered in support of the requested relief, applicants' representative made no claim that this proposed road between the two buildings would be necessary to an enjoyment of their intended, but undisclosed, manufacturing use. Similarly, the record being silent as to the nature of the manufacturing use for which the proposed building is planned, its indicated dimensions of 193' by 88' appear to be nothing more than an arbitrary determination of a desirable size.

The instant petitioner was represented at the hearing by counsel who objected to the relief sought on several grounds, each of which raised a serious question but none of which the board considered.

The hearing on the application was held September 11, 1967, at the conclusion of which the board reserved decision. Thereafter, by letter dated November 12, 1967, the board notified applicants as follows: "At the Board meeting, November 6, 1967, the Board, by a unanimous vote, granted your application, subject to — that there shall be a 20' front line and 20' sideline from Lot 74, Plat 2." A copy of the foregoing is in the record and we view it as constituting the board's decision in full, there being nothing to indicate otherwise.

It is petitioner's contention that the board's decision, relieving applicants from the 40' minimum front and side yard requirements of article IV by authorizing setbacks of 20' in each instance, predicated as it is on a total absence of evidence tending to establish need for any relief, is as arbitrary as would have been approval of the full relief requested, citing *Westminster Corp.* v. *Zoning Board of Review,* 103 R. I. 381, 238 A.2d 353; *H. J. Bernard Realty Co.* v. *Zoning Board of Review,* 96 R. I. 390, 192 A.2d 8; *Viti* v. *Zoning Board of Review,* 92 R. I. 59, 166 A.2d 211. We agree.

In those cases this court recognized a distinction between

applications for relief from building, lot-line and height restrictions when enforcement of such restrictions would preclude a permitted use and applications for special exceptions or variances which contemplated a use not expressly permitted. Implicit in those decisions, however, is a holding that applications for relief from lot-line regulations are addressed to the sound discretion of boards of review whose authority to act favorably is limited to the extent of relief demonstrated to be reasonably necessary to the enjoyment of the permitted use sought to be served. Absent such demonstration, a decision relieving land of building, lot-line and height restrictions is arbitrary and constitutes an abuse of discretion. See *Standish-Johnson Co.* v. *Zoning Board of Review,* 103 R. I. 487, 238 A.2d 754.

In the instant case, applicants established only that they proposed to construct and locate a new building as an adjunct to an existing building in a manner and place deemed by them as best suited for their purposes. They recognized that what they proposed would be violative of the ordinance requirements and so applied to the board for the relief necessary to accomplish their purpose, but offered no evidence tending to show that what they proposed was necessary to an enjoyment of permitted manufacturing uses. Nor is the case they made for the consideration of the board open to an inference of such need as to make the board's limited grant of relief a valid exercise of the sound discretion with which it is vested. Rather, bearing in mind that no plans whatsoever were submitted in connection with the application, it is apparent from the statements made to it by applicants' representative that the board's decision is a perceptible compromise between the ordinance requirements and the relief requested.

From a reading of the transcript compiled at the hearing, we get the clear impression that the board was motivated by some telling points made by applicants' representative

to the effect that, considering the nature of the zone in question, the ordinance requirements from which relief was sought are unrealistic. Sound though such arguments may be, they have meaning only when made to the town council within which is vested jurisdiction to amend the ordinance; for, however unrealistic a given provision may be, a board of review is without authority to grant relief therefrom, absent a showing that a strict enforcement thereof will operate to deny a property owner the full enjoyment of a permitted use.

The petition for certiorari is granted, and the decision of the board is quashed.

*Gerald A. Oster, Irving N. Espo, Thomas F. Fay,* for petitioner.

*Harry W. Asquith,* Town Solicitor, for respondent.