391 A.2d 84.

FIREMAN'S FUND INSURANCE COMPANY *v.*
LOLA-JANE McALPINE, *Administratrix.*

JAY K. ROGERS *v.* ALFRED C. TOEGEMANN *et al.*

WILLIAM J. BOYES, JR., *p.p.a.* WILLIAM J. BOYES *v.*
UNITED TRUCK AND BUS SERVICE CO. *et al.*

WILLIAM J. BOYES, JR., *p.p.a.* WILLIAM J. BOYES
*v.* HELEN I. MARTIN *et al.*

AUGUST 17, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.   In each of the above proceedings we have issued our common law writ of certiorari so that we may discuss the extent to which a litigant is immunized from discovery procedures by Super. R. Civ. P. 26(b). Each petition seeks review of an interlocutory order of the Superior Court granting a motion to compel the production of various materials in the possession of the petitioner. Three of the petitions originated in negligence actions and raise a common issue: whether written statements of witnesses taken by the petitioners' insurers are subject to discover under Super. R. Civ. P. 34. The fourth petition relates to a probate appeal now pending in the Superior Court and concerns a demand

for information, some of which involves communications between the petitioner and its counsel.

Before proceeding to examine the individual petitions, a brief review of the pertinent rules is in order. Our starting point is Rule 34, which provides the mechanism by which a party to a civil action may seek the production, for the purposes of inspection or copying, or writings, documents, photographs, and other data compilations that are in the possession of his adversary. The right to secure such material is not unlimited but is expressly made subject to the restrictions delineated in Rule 26(b).

This latter proviso delineates different limitations upon a party's access to matters possessed by another party. Rule 26(b)(1) states that discovery will be allowed as to "any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *." Thus, discoverable matter must be both relevant and not privileged. In this context, the term "privileged" denotes the recognized exclusions found in the law of evidence, such as those related to the attorney-client or the husband-wife relationship. 1 Kent, *R.I. Civ. Prac.* §26.11 at 220 (1969).[1]

Rule 26(b)(2) sets forth three additional limitations upon the scope of discovery under Rule 34. Unless a party can demonstrate "injustice or undue hardship," he will be precluded from obtaining a "writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation and in preparation for trial * * *." Furthermore, absolute immunity from discovery is provided for a "writing which reflects an attorney's mental impressions, conclusions, opinions, or legal theories * * *."

---

[1] A similar construction has been placed upon the federal counterpart of Super. R. Civ. P. 26(b). *Carl Zeiss Stiftung* v. *V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318 (D. D.C. 1966), *aff'd sub nom V.E.B. Carl Zeiss, Jena* v. *Clark,* 384 F.2d 979, 128 U.S. App. D.C. 10, *cert. denied* 389 U.S. 952, 88 S. Ct. 334, 19 L. Ed. 2d 361 (1967); *Campbell* v. *Eastland,* 307 F.2d 478 (5th Cir. 1962), *cert. denied* 371 U.S. 955, 83 S. Ct. 502, 9 L. Ed. 2d 502 (1963).

These restrictions represent a somewhat modified version of the work-product doctrine first enunciated in *Hickman* v. *Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947). The final limitation found in Rule 26(b)(2) is that "conclusions of an expert engaged in anticipation of litigation and in preparation for trial" are immune from discovery unless the court orders production to avoid injustice or undue hardship. *Town of North Kingstown* v. *Ashley*, 118 R.I. 505, 374 A.2d 1033 (1977).

Although our Rule 26(b)(2) protects writings made "in anticipation of litigation and in preparation for trial," we do not believe that the drafters ever intended the rule to be construed so that a litigant's immunity from discovery would be lost unless he could show that the documents in his possession were obtained not only in anticipation of litigation but also as part of his trial preparation. If the rule is construed literally, a party who without any warning suddenly finds himself immersed in litigation and then seeks the help of an expert could be forced to divulge the expert's report to his adversary because, even though the report was made in preparation for trial, its formulation could not be said to be a pre-litigation maneuver. In the past, when called upon to determine whether we should substitute the disjunctive "or" for the conjunctive "and," this court has emphasized that it would not allow itself to be blindly enslaved to a literal reading of a statute or an ordinance when to do so would defeat or frustrate the intendment of the Legislature. *Town of Scituate* v. *O'Rourke*, 103 R.I. 499, 239 A.2d 176 (1968). In the *Scituate* case we read "and" as "or" and we shall do the same here. *See* 1 Kent, *R.I. Civ. Prac.* §26.14 at 225 n.47 (1969). We think it quite obvious that the protective ambit of Rule 26(b)(2) was not meant to be restricted to material that had been prepared subsequent to the initiation of litigation. On the contrary, in our opinion, the rule was meant to be applied to materials gathered when litigation is merely a contingency. Thus, the rule's privilege may be invoked for

materials prepared either in anticipation of litigation or for trial.

With the above principles as a backdrop, we can proceed to our discussion of their application to the pertinent facts of the petitions. We begin our analysis with the three civil actions.

*Rogers* v. *Toegemann et al.*, No. 76-226-M.P., is a personal injury action arising out of a five-car chain collision that occurred on November 15, 1974. Rogers was the operator of the second vehicle in a line of vehicles that were stopped in Warwick in the southbound speed lane of Interstate Route 95. While he was stopped, Rogers alleges that he was hit by the car in back of him driven by Alan P. Durand. The impact caused him to tap the car in front of him driven by Susan A. Keegan. Within seconds, Rogers' vehicle was hit once again from the rear. It appears that two other vehicles had collided with the Durand car, forcing it into the Rogers automobile. The car immediately behind Durand was driven by Alfred C. Toegemann and owned by Amica Services, Inc. (Amica). The last vehicle in the chain was driven by Edward W. Graziano.

Rogers filed suit in the Superior Court on July 3, 1975 against Durand, Toegemann, Amica, and Graziano. Through interrogatories propounded to Toegemann and Amica, Rogers learned that shortly after the collision an investigator for their insurer had investigated the mishap and taken written statements from Durand, Graziano, and Keegan. These statements, which were obtained in late 1974 and early 1975, were in possession of Toegemann and Amica's attorney at the time suit was commenced. Rogers thereafter served upon Toegemann and Amica a request for the production of 13 items, including three statements secured by the insurance investigator. Objection was raised to all matters contained in Rogers' request, and Rogers then filed the appropriate motion to compel production under Super. R. Civ. P. 37.

After a hearing, the trial justice sustained Toegemann's and Amica's objection to the material Rogers sought access to except for four items, three of which were the statements obtained by the investigator. Toegemann and Amica's petition challenges the order directing the production of the statements.

The next two petitions arose out of an incident that occurred on October 31, 1974 in Warwick. William J. Boyes, Jr., was returning from school on a bus owned by United Truck & Bus Service Co. (United). Near the Apponaug School on Centerville Road, the bus pulled to the curb, came to a stop, and discharged William, who then proceeded to pass in front of the bus to cross the road. When he stepped from the side of the bus, he was struck by a vehicle driven by Helen I. Martin. On July 9, 1976, William's father commenced a suit in his own behalf and in behalf of his son against United and Martin. United is charged with being negligent in that (1) it failed to properly maintain the school bus and (2) its driver had neglected to inspect the flashing lights, failed to activate the lights when discharging William, and had left William at an unscheduled stop near a dangerous intersection. Martin's negligence is based upon her alleged noncompliance with the terms of G.L. 1956 (1968 Reenactment) §31-20-12 (stopping for a school bus whose red lights are flashing) and her failure to maintain proper control of her vehicle.

Once Mr. Boyes received the replies to his interrogatories, he discovered that shortly after his son was injured, investigators for United's and Martin's insurers had taken written statements from several witnesses, and these statements were in the possession of defendants' attorneys. Subsequently, United and Martin were ordered to produce the statements, and we then issued our writ.

At the outset we can quickly dispose of any claim that since the copies of the witnesses' statements were in the possession of attorneys for petitioners, they were protected from disclosure

by reason of the attorney-client privilege incorporated into Rule 26(b)(1). A document that is subject to discovery in the hands of a party or his agent does not become immunized from discovery under Rule 26(b)(1) simply by delivery to his lawyer. *Balistrieri* v. *O'Farrell,* 57 F.R.D. 567 (E.D. Wis. 1972); 1 Kent, *R.I. Civ. Prac.* §26.11 at 221 (1969); 8 Wright and Miller, *Federal Practice and Procedure* §2017 at 138-39 (1970).

The dispositive issue in Toegemann's, Amica's, United's, and Martin's petitions is whether the witnesses' statements come within the protective pale of Rule 26(b)(2) and especially that part of the rule providing for the qualified privilege of "any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent" in anticipation of litigation or in preparation for trial. If petitioners are correct in their contention that they do, the burden was upon the party requesting production to demonstrate that his access to the statements was necessary to avoid "injustice or undue hardship.

The Rhode Island cases which have dealt with Rule 26(b)(2) provide little guidance in determining if the written statements qualify as protected writings under the rule. However, Fed. R. Civ. P. 26(b)(3), despite slight differences in language, is similar in effect to our Rule 26(b)(2), and we will look to the federal courts for assistance. *Nocera* v. *Lembo,* 111 R.I. 17, 298 A.2d 800 (1973).[2]

The federal courts have not settled upon a single position regarding the discoverability of reports prepared by a party's insurer. The majority of cases hold that unless the insurer's investigation has been precipitated at the request or under

---

[2]Prior to its amendment in 1970, Fed. R. Civ. P. 26(b) did not provide for the immunization from discovery of materials obtained or prepared by a non-attorney. The 1970 amendments to the federal rules have made documents and tangible things obtained or prepared by a party's representative or agent likewise beyond the scope of the discovery process. *See* 8 Wright and Miller, *Federal Practice and Procedure* §2024 at 204-07 (1970).

the guidance of counsel, the investigation is conclusively presumed to have been made in the ordinary course of business and not in anticipation of litigation or preparation for trial. *Mc Dougall* v. *Dunn,* 468 F.2d 468 (4th Cir. 1972); *Fletcher* v. *Meserve,* 20 F.R. Serv. 2d 202 (D. Mass. 1975); *Atlanta Coco-Cola Bottling Co.* v. *Transamerica Insurance Co.,* 61 F.R.D. 115 (N.D. Ga. 1972); *Thomas Organ Co.* v. *Jadranska Slobodna Plovidba,* 54 F.R.D. 367 (N.D. Ill. 1972); *Universal Venders, Inc.* v. *Candimat Co. of America,* 16 F.R. Serv. 2d 1329 (E.D. Pa. 1972).[3]

Although these courts recognized that the potential for litigation is always a possibility on the horizon with insurers, they assert that it is not until an attorney is called upon the scene to direct that certain information be obtained because of the imminent threat of litigation that it can be said that an insurer has acted in anticipation of litigation. The mere contingency of litigation sometime in the future is not sufficient under Rule 26(b) to be "in anticipation of litigation." A contrary position would, according to the court in *Thomas Organ Co.,* "be a foreclosure of discovery of almost all internal documents of insurance companies relating to the claims of insureds." 54 F.R.D. at 373.

The majority approach has been criticized as contrary to the wording and intent of the 1970 amendments to Rule 26(b). 4 Moore, *Federal Practice* ¶26.64[3] at 64 (1977-78 Cum. Supp.). Both the Rhode Island and federal rules clearly do not require the intervention of an attorney to vest writings obtained or prepared by a party's representative with the qualified privilege granted under the rules. While both rules mandate that the writings be made "an anticipation of litigation," we do not feel that this requirement can only be satisfied when an attorney had been engaged to oversee the compilation of relevant data.

---

[3]This view has also been adopted by the courts of Delaware. *Conley* v. *Graybeal,* 315 A.2d 609 (Del. Super. 1974); *Brandywine Shoppe, Inc.* v. *State Farm Fire & Casualty Co.,* 307 A.2d 806 (Del. Super. 1973).

We must concede that it is difficult to draw the line between materials prepared by an insurer in anticipation of litigation and those prepared in the ordinary course of the insurer's business. One court has suggested as a solution to the problem that a case-by-case approach be adopted. *Spaulding* v. *Denton*, 68 F.R.D. 342 (D. Del. 1975). We do not feel, however, that this is a satisfactory response since it provides for no uniformity in the manner in which the issue is resolved in the lower tribunals.

Another view, and the one to which we subscribe, is found in *Almaguer* v. *Chicago, Rock Island & Pacific R.R.*, 55 F.R.D. 147 (D. Neb. 1972).[4] There a railroad employee had been injured on the job, and the company's insurer conducted an investigation shortly after the incident. The court held that

> "statements taken by a claim agent immediately after an accident are taken in anticipation of litigation. * * * The anticipation of the filing of a claim against a railroad when a railroad employee has been injured or claims to have been injured on the job, is undeniable, and the expectation of litigation in such circumstances is a reasonable assumption." 55 F.R.D. at 149.

This statement is of equal validity when the mishap involves an automobile. In our litigious society, when an insured reports to his insurer that he has been involved in an incident involving another person, the insurer can reasonably anticipate that some action will be taken by the other party. The seeds of prospective litigation have been sown, and the prudent party, anticipating this fact, will begin to prepare his case. *See* 8 Wright and Miller, Federal Practice and Procedure, §2024 at 198 (1970). Although a claim may be

---

[4] *See also Hamilton* v. *Canal Barge Co.*, 395 F. Supp. 975 (E.D. La. 1974), where the fact that an insurance company investigated a claim on the day it happened was thought to raise no question but that it was "prepared in anticipation of litigation."

settled short of the instigation of legal action, there is an ever-present possibility of a claim's ending in ligitation. The recognition of this possibility provides, in any given case, the impetus for the insurer to garner information regarding the circumstances of a claim.

We do not mean to imply, however, that under no circumstances can an insurer be deemed to conduct an investigation of a claim in the ordinary course of its business. In many cases an insurer may prepare reports for a purpose other than in response to the threat of litigation. For example, in *Nordeide* v. *Pennsylvania Railroad Co.*, 73 N.J. Super 74, 179 A.2d 71 (1962), the plaintiff alleged that railroad employees knocked him unconscious and threw him on the tracks. While still unconscious, a train ran over him, severing both his legs. The court permitted discovery of an investigation report taken the day after the incident on the ground that such a document was routinely prepared as required by the Interstate Commerce Commission. Obviously, the report was not made in expectation of litigation, and consequently it did not come within the rule.

Since we find that the statements taken by petitioners' investigators are entitled to the qualified privilege of Rule 26(b)(2), the burden was upon respondents to show that "a denial of production or inspection will result in an injustice or undue hardship." The determination of this issue is vested in the sound discretion of the trial justice, who should look at the facts and circumstances of each case in arriving at an ultimate conclusion. *Southern Railway Co.* v.*Lanham*, 403 F.2d 119 (5th Cir. 1968); *Tiedman* v. *American Pigment Corp.*, 253 F.2d 803 (4th Cir. 1958).

The record before us is silent as to what Rogers or Boyes presented to the courts below as the circumstances demonstrating that the statements were necessary to prevent injustice or undue hardship. Also absent from the record is any indication of the circumstances upon which the trial justice relied in ordering the production of the witnesses' statements

possessed by the investigators. Before this court Rogers and Boyes argue that the mere lapse of time from when the statements were obtained to when their existence became known is, in and of itself, sufficient to constitute undue hardship under the rule. In support of this contention, they direct our attention to a number of federal cases which hold that statements taken from eyewitnesses shortly after an event are unique catalysts in the search for truth in that they provide an immediate impression of the facts, the substantial equivalent of which cannot be recreated or duplicated by a deposition or interview months or years after the event. The unique quality of such statements has been determined to provide special circumstances satisfying the undue hardship requirement.[5] *McDougall* v. *Dunn*, 468 F.2d 468 (4th Cir. 1972); *Southern Railway Co.* v. *Lanham*, 403 F.2d 119 (5th Cir. 1968); *Teribery* v. *Norfolk & Western Railway*, 68 F.R.D. 46 (W.D. Pa. 1975); *Tiernan* v. *Westext Transport Inc.*, 46 F.R.D. 3 (D. R.I. 1969); *Johnson* v. *Ford*, 35 F.R.D. 347 (D. Colo. 1964); *DeBruce* v. *Pennsylvania R. Co.*, 6 F.R.D. 403 (E.D. Pa. 1947); *Tinder* v. *McGowan*, 15 F.R. Serv. 2d 1608 (W.D. Pa. 1970).[6]

However, these cases afford no support for the lapse-of-time argument presented by Rogers and Boyes. The cases to which they allude refer to the lapse which occurs between the mishap and the taking of a statement, while the lapse relied on by Rogers and Boyes concerns the period between the taking of a statement and the awareness that a statement has been procured by the other party's insurer. Furthermore, with the exception of *McGowan* and *Westext Transport Inc.*,

---

[5]The Advisory Committee's Note to amended Fed. R. Civ. P. 26 also supports this proposition: "The analysis of the court suggests circumstances under which witness statements will be discoverable. The witness may have given a fresh and contemporaneous account in a written statement while he is available to the party seeking discovery only a substantial time thereafter." 48 F.R.D. 501. *See also* 1 Kent, *R.I. Civ. Prac.* §26.14 at 227 (1969).

[6]*Contra, Fidelity & Deposit Co.* v. *S. Stefan Strauss, Inc.*, 52 F.R.D. 536 (E.D. Pa. 1971); *Stamatakos* v. *Hunter Shipping Co.*, 49 F.R.D. 23 (E.D. Pa. 1969).

the eyewitnesses' statements were made within a day or two of the contested event. The courts were careful to emphasize that it was the proximity of the making of the statement to the particular incident which gave the statements their unique value. They provided an immediate impression of the facts, an on-the-spot account, as it were, which can never really be recreated by other means. *DeBruce* v. *Pennsylvania R. Co.*, 6 F.R.D. at 406. Thus, in *Hamilton* v. *Canal Barge Co.*, 395 F. Supp. 975 (E.D. La. 1974), the court stated, in ordering the production of five eyewitness statements taken on the day of the accident:

> "It is important to note, however, that mere lapse of time should normally be enough to require production only of statements given at almost the same time as the accident. Were a statement given a week, or two weeks, after the accident at issue, the court might well require counsel to demonstrate * * * that the witness was not available for deposition without undue hardship." 395 F. Supp. at 978.

Looking now to the individual requests made by Rogers and Boyes, application of the above principle easily disposes of most of the disputed requests. The statements which Rogers sought access to in the files of Toegemann's and Amica's insurers cannot be viewed as being made either immediately after or nearly contemporaneous with the chain collision on the interstate. Alan Durand was the first to be interviewed by the insurance investigator. This took place on November 29, 1974, a full 2 weeks after the collision. The statements from Graziano and Keegan bear dates of December 5, 1974 and January 4, 1975, respectively. The time lag between the collision and each of the witnesses' statements demonstrates that these are not the almost-contemporaneous eyewitness accounts that are discoverable with a further showing.

Likewise, of six Boyes requests from United, two statements were taken approximately 11 months after the young schoolboy was injured, a third was given over 14 months

A letter from the town's Director of Public Works, John Cook, was introduced. In the letter Cook recommended that petitioner's application be denied because the lot in question was large enough for only one discrete business, not two, and because the combination of the two uses would introduce traffic problems, particularly with the gas pumps located at the front of the property. Other evidence indicated that a safety hazard threatened pedestrians whenever a customer on the Main Street side of the pump island opened a car door because the door would swing out onto the sidewalk.

In denying petitioner's application for a special exception, respondent stressed that only 2,280 square feet had been designated for the gas station, whereas the zoning ordinance required a minimum of 5,000 square feet for a commercial use in a CD zone. The respondent felt that this fact negated petitioner's argument that the proposed use as a gas station would serve public convenience and welfare and that neighboring property would not be harmed if the exception were granted. As to the three requests for relief from setback regulations, respondent treated them as requests for variances and concluded that petitioner had failed to prove that relief would not be contrary to the public interest and that a literal enforcement of the setback regulations would result in unnecessary hardship. The respondent emphasized the potential traffic hazards, which in its opinion would aggravate existing traffic problems in the area. Additionally, respondent rejected petitioner's argument that special conditions of the lot, such as the 12-foot height differential between it and the abutting lot at its easterly lot line, rendered part of the lot unusable unless the setback relief was granted. The respondent noted that the lot was perfectly usable as either a gas station *or* a food store, and that the need for relief arose only when petitioner sought to combine those two uses. Finally, respondent noted that its denial did not deprive petitioner of full and beneficial enjoyment of its land because there were many ways in which the lot could be used.

The petitioner appealed the decision of respondent to the

Superior Court under G.L. 1956 (1970 Reenactment) §45-24-20. The trial justice denied the appeal because he found ample evidence in the record to support respondent's decision. The matter is now before us on certiorari. The petitioner raises two issues for review. First, whether respondent erred by misapplying the standard enunciated in *Nani* v. *Zoning Board of Review*, 104 R.I. 150, 242 A.2d 403 (1968), for evaluating applications for special exceptions. Second, whether respondent erred in applying variance standards in evaluating petitioner's request for relief from lot line regulations, since, petitioner contends, such relief is in the form of a deviation, not a variance.

I

As we mentioned earlier, the use of a CD-zoned lot as a gas station is permitted only by special exception under the East Greenwich Zoning Ordinance, article II, section 6. Under article VIII, section 1 of that ordinance, the burden is on the applicant to prove to the zoning board that the "public convenience and welfare will be served and that the appropriate use of neighboring property will not be substantially or permanently injured if the exception is granted." In *Nani* v. *Zoning Board of Review, supra,* which involved permission to use a commercial zone for a gas station, we held that the "public convenience and welfare" standard that must be met as a precondition to the grant of a special exception is satisfied by a showing that the proposed use will not result in conditions "inimical to the public health, safety, morals and welfare." *Id.* at 156, 242 A.2d at 406.

After *Nani,* we have interpreted zoning ordinances that bear the "public convenience and welfare" standard as requiring that an applicant for a special exception must introduce competent evidence that "'neither the proposed use *nor its location on the site* would have a detrimental effect upon public health, safety, welfare and morals." *Hester* v. *Timothy,* 108 R.I. 376, 385-86, 275 A.2d 637, 641-42 (1971)(emphasis in original).

The petitioner urges that respondent applied the pre-*Nani* "public convenience and welfare" standard to the application for a special exception, not the post-*Nani* "inimical to public health, safety, morals and welfare" standard. While it is true that respondent did phrase its decision in terms of the pre-*Nani* standard, it is apparent from a review of the record that they evaluated the evidence in light of the post-*Nani*, public-interest standard. We also believe that there is sufficient evidence in the record to establish that the special exception sought by petitioner for use of the lot as a gas station would cause traffic problems and would violate the public interest as expressed in the ordinance requiring 5,000 square feet of property for a commercial use in a CD zone.[1] In *Nani* v. *Zoning Board of Review, supra,* we held that traffic congestion was contrary to public welfare.

Thus even though respondent framed its decision in terms of the the "public convenience and welfare" standard, its decision makes sufficient factual determinations and contains sufficient reasons why relief was denied to allow us to conclude that there was competent evidence before the board to show that the proposed use would not serve the public convenience and welfare because it would result in conditions inimical to the "public health, safety, morals and welfare." We conclude, therefore, that the trial justice did not err in affirming the denial of petitioner's request for a special exception.

## II

Relief from lot line regulations, such as setbacks, may be granted as a deviation, an exception, or a variance. *Sun Oil Co.* v. *Zoning Board of Review,* 105 R.I. 231, 251 A.2d 167 (1969). The petitioner argues that its requests for relief from lot line regulations were for deviations, not for variances, and that therefore respondent should have applied the deviation standard in reviewing the application. The deviation stan-

---

[1] As we pointed out, only 2,280 square feet were allotted for the gas station.

dard was set out in *Viti* v. *Zoning Board of Review*, 92 R.I. 59, 166 A.2d 211 (1960) and articulated in *Lincoln Plastic Products Co.* v. *Zoning Board of Review*, 104 R.I. 111, 242 A.2d 301 (1968), where we stated that an applicant for a deviation from lot line regulations must show that relief is necessary for the enjoyment of the *permitted use* sought to be served. The emphasized phrase "permitted use" is petitioner's nemesis.

We agree with petitioner that a variance is a form of relief from restrictions on the *use* of the land, while a deviation is form of relief from an ordinance which regulates the *manner* in which a permitted use may be implemented. *See Westminster Corp.* v. *Zoning Board of Review*, 103 R.I. 381, 238 A.2d 353 (1968). We also agree that under the *Viti* rule, an applicant for a deviation need not show that a literal enforcement of the regulation would deprive him of *all* beneficial use of his land, which is the standard applied by respondent in denying petitioner three requests for deviations. However, the *Viti* rule only applies where the relief sought is for a permitted use, never where the applicant seeks both a deviation and a special exception, as petitioner does in the instant case. *Sun Oil Co.* v. *Zoning Board of Review*, 105 R.I. 231, 251 A.2d 167 (1969). Thus the *Viti* rule does not apply here.

The petitioner also argues that a conditionally permitted use, which is a euphemism for a use permitted by means of special exception, is synonymous with the phrase "permitted use" for purposes of application of the *Viti* rule. We rejected this identical argument in *Lindberg's Inc.* v. *Zoning Board of Review*, 106 R.I. 667, 262 A.2d 628 (1970), and we see no reason not to do so here.

We conclude, therefore, that the petitioner was not entitled to have its application for deviations evaluated under the *Viti* rule.

The petition for certiorari is denied and dismissed, the writ previously issued is quashed, and the record certified to us is

ordered returned to the Superior Court with our decision endorsed thereon.

*Petrarca & McGair, Louis A. Petrarca, Jr., Joseph J. McGair*, for petitioner.

*A. Earl Shaw, Jr.*, Town Solicitor, for respondent.