73 N.J. Super. 313 (1962)
179 A.2d 768
TEXACO, INC., A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFF-APPELLANT,
v.
THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MILLBURN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 1962.
Decided April 6, 1962.
*314 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Francis E.P. McCarter argued the cause for appellant (Messrs. McCarter & English, attorneys).
Mr. Harold M. Kain argued the cause for respondent.
The opinion of the court was delivered by CONFORD, S.J.A.D.
The Law Division affirmed the action of the Millburn Board of Adjustment in denying an application for a recommendation to the governing body of the township that a gasoline station be permitted to be established at a designated location in a business district of the township as a "special exception" use under the terms of the local zoning ordinance. The disappointed applicant appeals.
This matter has had a rather tortuous progress before the board and the trial court. An understanding of our holding calls for fairly detailed recitation of the course of the proceedings and of the pertinent facts.
The property in question is a vacant lot, situated at the southwest corner of Woodland and Chatham Roads, together with an adjoining plot. The frontage is 161 feet on Chatham Road and about 100 feet on Woodland Road. The location is in a small Business "B" district of the community as zoned, extending about two blocks along the southerly side of Chatham Road, the other side of the road being occupied *315 by the tracks and Short Hills passenger station of the D.L. & W. Railroad. The railroad is on an elevated embankment precluding a view of the property here involved from the residential area north of the railroad. Directly across Woodland Road on the southeast corner of Woodland and Chatham Roads is an existing "Esso" gasoline station. There are miscellaneous stores and a postoffice in this Business "B" district. The major portion of the high-grade residential Short Hills area of Millburn is north of the railroad at this point. A smaller residential area is south of this business pocket, and the terrain declines therefrom in that general direction. A substantial area southwest of the locus in quo is taken up by a municipal arboretum and bird reservation. There is scant indication in this record that the corner property here in question is within view of many, if any, residences, except for a garden apartment nearby on Woodland Road.
The Business "B" district here involved is situated a substantial distance by road from the nearest other business district. The main business center of Millburn is situated about a mile to the east, where the Millburn station of the railroad and a considerable number of gasoline stations are to be found.
The pertinent provisions of the zoning ordinance read as follows:
"Section 1. USE. Within any business district no building or premises shall be used except for one of the following purposes:

* * * * * * * *
(h) Recognizing the necessity for public garages, public parking space, automobile fuel filling stations, riding academies and public stables in business districts, and at the same time that they may be inimical to the public health, safety and general welfare of the community if located without due consideration of conditions and surroundings, the following procedure is ordained for their establishment in such districts:
An application for a permit for a * * *, automobile fuel filling station, * * * shall be made first to the Board of Adjustment, which shall hear the application in the same manner and under the same procedure as the Board of Adjustment is empowered by law *316 and ordinance to hear cases and make exceptions to the provisions of a zoning ordinance, and the Board of Adjustment may thereafter recommend to the Township Committee that a permit be granted for a * * *, automobile fuel filling station, * * *, if in its judgment said * * *, automobile fuel filling station, * * *, as it is proposed to be located, will not be detrimental to the health, safety and general welfare of the community, and is reasonably necessary for the convenience of the community, whereupon the Township Committee may by resolution approve or disapprove such recommendation, and in case such recommendation shall be approved, and all statutory and other municipal requirements shall be complied with, the administrative officer in charge of granting permits shall forthwith issue a permit for such structure or use subject to such other requirements or restrictions as the governing body may see fit to impose." (Emphasis added)
It was pursuant to these provisions that plaintiff made application to the Board of Adjustment for a favorable recommendation for leave to erect a gasoline station in accordance with a set of plans attached thereto. A hearing on the application was conducted by the board August 9, 1960. The proceedings are reflected by minutes, no stenographic transcript having been made. A member of the board, Mr. Brown, disqualified himself in the matter because he was a shareholder of the applicant corporation. A district sales representative of the plaintiff described the proposed station as one of superior specifications. It would have access both from Chatham Road and Woodland Road. After some cross-examination of the witness by or on behalf of nearby property owners relative to details of maintenance and lighting of the station, the need therefor in the community, and safety of children crossing the entrances, the hearing was continued to the board's next meeting date on September 13, 1960.
At the proceedings at the adjourned meeting, which were recorded stenographically, there were argument by counsel, some testimony, and expressions of sentiment for and against the proposal. Opposition was expressed by the principal and the P.T.A. of an elementary school two blocks to the west. Strong objection was registered by certain civic associations of the vicinity and individual members thereof grounded in general concern over safety hazards supposedly *317 attendant upon gasoline stations and the effect of such a use on neighboring residential properties, together with opinions that there was no need or desire by area residents for a station at this location. The applicant, however, produced a petition signed by 41 residents of the area favoring the station. Moreover, it attempted to show a need and utility for a station so situated by means of a traffic count and expert testimony based thereon. Proofs were also submitted to establish the safety of the business and to the effect that no other commercial use of the property was economically feasible. Conflicting views were offered as to the effect of such a station on traffic safety and convenience.
At the next meeting of the board on October 11, 1960 the qualified members divided evenly, 2-2, on a motion by Mr. Mott to recommend favorable action on the application to the township committee, and the motion was declared lost and the application denied for lack of a majority in its favor. Mr. Mott had moved the adoption of these findings of fact:
"1. The proposed gasoline station will not be detrimental to the health of the community.
2. The proposed gasoline station would not be detrimental to the safety and general welfare of the community.
3. A gasoline filling station at this location will perform a useful and essential function for the community for the Short Hills section of which there is presently insufficient service of this kind within a reasonable distance."
Mr. Mott's motion was seconded by Mr. French. Mr. Clark explained his negative vote: "In my opinion the evidence on behalf of the applicant at this special hearing was not conclusive that there is sufficient need. Therefore, I vote against the motion."; and Mr. Parsons explained his negative vote: "In explanation of my vote, although the proposed gasoline station would not be detrimental to the health and public safety, I do not believe that it is reasonably necessary for the convenience of the community. *318 The fact that there are numerous other gasoline stations in the Township, particularly near the Millburn Station, where residents could go seems to me to bear out this opinion. What they might save from additional mileage on the car would be made up for on the cheaper commutation from the Millburn station. Therefore, I vote against the application."
Thereupon plaintiff brought this action in lieu of prerogative writs. Its position, as stated in the pretrial order, was that the refusal of the board to make the requested recommendation was arbitrary and capricious, particularly in respect of the conclusions of two members that the proposed station was not "reasonably necessary for the convenience of the community." Those determinations were also assailed as not adequately supported by findings of fact. The trial court held the findings of fact of all the board members inadequate to permit a judicial determination whether the ordinance standards for grant of special exceptions, quoted above, as interpreted by this court in Tullo v. Millburn Tp., 54 N.J. Super. 483 (App. Div. 1959), had been properly applied in this case. The entire matter was therefore remanded to the board "for reconsideration, findings and recommendation to the Township Committee in the light of the evidence in the record and the principles expressed in this opinion."
Pursuant to this order a special meeting of the board of adjustment was held June 20, 1961. Mr. French changed his previous position, voting to deny the application, and the vote was thus 3-1 against a favorable recommendation. Each board member made his own separate statement of amplified findings of fact, pursuant to the order of remand. The first part of Mr. Mott's statement of findings was identical with the three numbered findings he made originally. However, he added the following:
"4. Much of the evidence in this case duplicates evidence given on a previous application for a gasoline service station on this same *319 site which application was approved by the Board of Adjustment. While I realize that this does not establish a precedent, it may also be of interest that the same general objections were made at the time application was made for the Esso Station now existing across the corner of Woodland Road. This Esso Station is apparently unable to handle the need without blocking up the roads.
5. From a traffic standpoint this gas station layout would provide free open vision across the corner of Woodland Road and Chatham Road, whereas other types of buildings coming out to the sidewalk would block the vision both ways."
Mr. Clark's conclusions and findings were detailed and lengthy. As to the criterion of absence of detriment to the public health, safety or general welfare, he said: "* * * the statistical evidence introduced by witnesses for the applicant was convincing that the proposed use would not be detrimental to the health, safety and general welfare of the community in the narrow technical aspects of hazards to health, safety and value of nearby properties; nevertheless, I did not conclude that the absence of definite detriments constituted positive proof of desirability." He then undertook to "amplify" his original statement that the applicant's evidence "was not conclusive that there is sufficient need." Without our setting his findings out at length, it suffices to say they were detailed and constituted a rational basis for a conclusion that the convenience of the automobile users of the general Short Hills area did not reasonably require the establishment of a gasoline station at that location.
Mr. Parsons' statement of conclusions was also lengthy. In relation to the matter of public health, safety or general welfare, he gave a reasoned analysis of the facts relative to harm to pedestrians, leading to a conclusion of no hazard to public safety. He also found no danger to the public health. He decided there would be no depreciation of surrounding property values, holding none of the proponents of that view qualified as an expert on property values. Like Mr. Clark, however, Mr. Parsons was specific and detailed in explaining from the evidence his controlling determination *320 that the community, even the small portion of it in the immediate vicinity, did not reasonably require service by a gasoline station at that location.
Mr. French stated he still felt that "the proposed gasoline station would not be detrimental to the health, safety and general welfare" but that on further consideration of the evidence and discussion with the other members he now found "no need for another filling station at this location." Like Mr. Clark, Mr. French stressed the smallness and limited commercial scope of this particular Business "B" district.
On return of the expanded findings and decision the trial court sustained the majority determination. In effect, it concluded that there was a proper exercise of discretion in determining that there was no reasonable need for a gasoline station at this location. Implicit in this ruling was the holding that entirely without regard to whether the establishment of a gasoline station at this location would involve any harm to the public health, safety or general welfare in a zoning sense, the special exception might properly be denied on the single test that the location of such a station on this property was "not necessary." We have concluded that this determination falls afoul the principles expressed in our previous construction of this ordinance in the Tullo case, cited above (54 N.J. Super. 483). If there was no injury to any proper zoning consideration or interest in the establishment of this station, as was expressly found by each of the voting board members, the application could not properly be denied by mere virtue of the fact that there was no community need for such a station so located.
In Tullo, whose comprehensive exposition of the nature of special exception uses has recently been cited with approval by the Supreme Court, Reinauer Realty Corp. v. Paramus, 34 N.J. 406, 409 (1961), the court dealt with identical provisions for special exception uses, and in the same ordinance as is here involved, but covering a different set of uses  specifically, in that case, a "club-house," the application *321 being for an addition to an existing clubhouse and for construction of an outdoor swimming pool. The court sustained affirmative action on the application by the zoning board and the governing body. In reference to the theory of special exceptions the court stated (at pp. 490, 491):
"The theory is that certain uses, considered by the local legislative body to be essential or desirable for the welfare of the community and its citizenry or substantial segments of it, are entirely appropriate and not essentially incompatible with the basic uses in any zone (or in certain particular zones), but not at every or any location therein or without restrictions or conditions being imposed by reason of special problems the use or its particular location in relation to neighboring properties presents from a zoning standpoint, such as traffic congestion, safety, health, noise, and the like. The enabling act therefore permits the local ordinance to require approval of the local administrative agency as to the location of such use within the zone. If the board finds compliance with the standards or requisites set forth in the ordinance, the right to the exception exists, subject to such specific safeguarding conditions as the agency may impose by reason of the nature, location and incidents of the particular use."
For present purposes, it is particularly significant that the court rejected any interpretation of the criterion "reasonably necessary for the convenience of the community," as making it absolutely mandatory to establish on each application that the particular use involved is reasonably necessary to the community or its convenience (See 54 N.J. Super., at p. 495). Such a zoning provision does not, for example, vest in boards of adjustment regulatory power in any sense comparable with the statutory jurisdiction of such agencies as a liquor control board or the state banking department to determine whether the establishment of new liquor stores or taverns or new banks or branches thereof should or should not be authorized as a matter of public necessity or convenience. The use, per se, is authorized by the ordinance for the zoning district specified, subject to safeguards bearing solely upon zoning considerations incident to such use in the particular location involved, not those peculiar to the regulation of particular kinds of enterprises specially affected *322 with a public interest, such as those illustratively mentioned above. This is not to say that if the proposed location of a gasoline station applied for as a special exception use presents problems of potential inimical effect upon zoning interests there may not be weighed in the balance to offset them, if the discretionary judgment of the board and governing body so conclude, the degree of need of the surrounding area for the service afforded by a facility in that location. As was specifically stated by Judge (now Mr. Justice) Hall in Tullo (54 N.J. Super., at p. 497): "The other statutory standard of absence of substantial detriment to the public good [at the end of N.J.S.A. 40:55-39] must have reference in such a case primarily to the weighing of the admitted general utility of the use and the public convenience of the requested location against the effect of disadvantageous factors on other uses in the area." Compare the interpretation, effect or application of criteria of public convenience and need in such conditional use or special exception cases as Wheeler v. Gregg, 90 Cal. App.2d 348, 203 P.2d 37 (Ct. App. 1949); West Hartford Meth. Ch. v. Zoning Board of Appeals, 143 Conn. 263, 121 A.2d 640 (Sup. Ct. Err. 1956); Illinois Bell Telephone Co. v. Fox, 402 Ill. 617, 85 N.E.2d 43 (Sup. Ct. 1949); Lawrence v. Board of Appeals of Lynn, 336 Mass. 87, 142 N.E.2d 378 (Sup. Jud. Ct. 1957).
It is thus apparent from the general rationale of special exception uses, and from the interpretation of the specific criteria used in this ordinance, both as expounded in Tullo, that an application for a particular use under such an ordinance provision may not be denied if no zoning evil or disadvantage is found to attend such use. In such case, a denial cannot be justified merely because the zoning board finds that there is no community need for the facility at the specific location. Such a result would not constitute the appropriate discretionary weighing of zoning harms against community benefits from the facility at that location but an administrative veto of a perfectly legitimate and socially *323 useful facility not hurtful to the community in any zoning sense at all, as found by the body charged with the factual determination.
It is clear that each of the four voting members of the board of adjustment affirmatively found an absence of prospective zoning harm from the establishment of this gasoline station. Two of them even expressly rejected the hypothesis that there would be any decline in nearby property values, and we cannot from the evidence adduced before the board hold that conclusion unwarranted. The only equivocation was by Mr. Clark, who stated that "I did not conclude that the absence of definite detriments constituted positive proof of desirability." However, the ordinance does not commit to the board any jurisdiction to deny a special exception use not proven to be "desirable," if permissible in the district in question under the ordinance. It is true, as defendant urges, that the courts have often held that gasoline stations are known to present potential zoning problems in terms of safety, traffic and effect upon neighboring property values, Schmidt v. Board of Adjustment, Newark, 9 N.J. 405, 422 (1952), and this is why their establishment may be attended with the cautionary controls embodied in special exception use procedure. Ibid. But there is no legal principle of which we are aware requiring a holding as a matter of law that any gasoline station, no matter how carefully constructed and maintained, is necessarily a zoning detriment wherever situated, and therefore subject to disallowance by a zoning board as a special exception use on the sole ground of failure to show that the convenience of the community requires its establishment at the location applied for. The commendably frank concession by the members of this board that they found no zoning harm in this proposed use was not arbitrary or unreasonable. And it compels the legal result that they were required to recommend the use.
Defendant does not argue that the grant of a recommendation for the use applied for will offend the omnibus *324 condition of N.J.S.A. 40:55-39 that the relief sought must be "without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." Moreover, satisfaction of that condition is apparent from the express findings of the board.
Reversed and remanded to the board of adjustment with directions to that body to make the recommendation applied for. No costs.