242 A.2d 403.

ALBERT E. NANI *et ux. vs.* ZONING BOARD OF REVIEW OF
THE TOWN OF SMITHFIELD.

JUNE 6, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. The petitioners applied for permission to use their premises located in a commercial (C-1) zone for an automobile service station. The respondent board found that the gasoline station abutting the petitioners' property and the five others within a one-mile radius amply provided the public with the same services which the petitioners proposed to furnish. On that premise, it concluded that the use sought would not serve the public convenience and welfare, and it denied the application for an exception. We now review on certiorari.

The substantial issue is whether community or neighborhood need for the proposed use is a relevant consideration under a zoning ordinance which makes entitlement to an exception dependent upon a showing that the use sought will serve or be reasonably necessary for "* * * the public convenience and welfare."

In a long line of cases this court, equating the "public convenience" requirement in zoning ordinances with "public need," has held that a zoning board should make a special exception to the terms of an ordinance where the showing has been that the use proposed to be established will serve a community need; conversely, it has also held that an applicant will not qualify for an exception where the proof is that there is no public need at the specific location for the use requested.[1]

---

[1]Among those cases are:

*Hopf* v. *Board of Review,* 102 R. I. 275, 230 A.2d 420;

*Our Lady of Mercy Greenwich* v. *Zoning Board of Review,* 102 R. I. 269, 229 A.2d 854;

*Fitzgerald* v. *Board of Review,* 99 R. I. 221, 206 A.2d 635;

*Chirico* v. *Zoning Board of Review,* 98 R. I. 244, 201 A.2d 131;

*Caldarone* v. *Zoning Board of Review,* 95 R. I. 485, 187 A.2d 924;

*Budlong* v. *Zoning Board of Review,* 93 R. I. 199, 172 A.2d 590;

*Hall* v. *Zoning Board of Review,* 93 R. I. 65, 170 A.2d 912;

*Preston* v. *Zoning Board of Review,* 92 R. I. 463, 169 A.2d 908;

*Fratantuono* v. *Zoning Board of Review,* 90 R. I. 449, 159 A.2d 378;

*Lowry* v. *Zoning Board of Review,* 90 R. I. 350, 158 A.2d 150;

Along with these decisions, and neither overruling those which precede nor being overruled by those which follow, are the two opinions in *Center Realty Corp.* v. *Zoning Board of Review,* 96 R. I. 76, 189 A.2d 347, and 96 R. I. 482, 194 A.2d 671. In each, the court without reference to the "public need" cases, rejects the notion that an exception should be refused on the ground that the public has no need for more of what it already has in sufficiency, or that entitlement to an exception requires a showing that members of the public would be convenienced thereby. The standard they fix for satisfying the "public convenience and welfare" requirement is proof that the location of the use proposed at the site selected will not be detrimental to the public health, safety, morals or welfare.[2]

There is a basic difference between the two approaches. The cases which follow the "public need" concept, in essence and when studied as to their overall effect, find a dual standard in the "public convenience and welfare" requirement. While they read the word "welfare" as though it had police power overtones, they consider the word "convenience" as though it were used in a "public utility" context, and thus as demanding that the use proposed be reasonably necessary for the public accommodation.[3]

The *Center Realty* view, on the other hand, treats the words "convenience" and "welfare" as though they are

---

*D'Ordine & Son, Inc.* v. *Zoning Board of Review,* 79 R. I. 489, 90 A.2d 416;

*Nutini* v. *Zoning Board of Review,* 78 R. I. 421, 82 A.2d 883;

*Woodbury* v. *Zoning Board of Review,* 78 R. I. 319, 82 A.2d 164.

[2]This viewpoint finds support in the dicta of *Richardson* v. *Zoning Board of Review,* 101 R. I. 194, 221 A.2d 460, and in the dissenting opinion of Roberts, J., in *Chirico* v. *Zoning Board of Review,* 98 R. I. 244, 248, 201 A.2d 131, 134.

[3]Under similar legislation, the same conclusion has been reached. *West Hartford Methodist Church* v. *Zoning Board of Appeals,* 143 Conn. 263, 121 A.2d 640; *Illinois Bell Telephone Co.* v. *Fox,* 402 Ill. 617, 85 N.E.2d 43; *Long* v. *Board of Zoning Appeals,* 134 Ind. App. 97, 182 N.E.2d 790; *Milwaukie Co. of Jehovah's Witnesses* v. *Mullen,* 214 Ore. 281, 330 P.2d 5.

synonymous, and reading them as if the legislative intention had been to use them in a strict police power sense, in effect, considers them as if they were a substitute for the phrase "* * * the public health, safety, morals or general welfare." To construe them as imposing a "public need" criterion, the *Center Realty* view says, smacks of licensing and the regulation of competition, and, as such, is beyond the ken of what is permissible in zoning.[4] This view perhaps has its antecedent in *Sundlun* v. *Zoning Board of Review*, 50 R. I. 108, 145 A. 451, where the court said at 114, 145 A. at 454, "* * * that it is the intent of the ordinance that the Board should, on application being made, make an exception in favor of such stations in such districts wherever the existence of such a station would be reasonably consistent with a due observance of public health, safety, morals and the general welfare in the proper sense."

There are arguments pro and con on each view. For the "public need" theory, the rationale is that the local legislature derives its power to prescribe the standards controlling the granting of exceptions from the enabling legislation. It requires that the local legislatures shall provide that zoning boards may make special exceptions to the terms of an ordinance which are "* * * reasonably necessary for the convenience or welfare of the public."[5] Under this

---

[4]This approach, too, is supported elsewhere. *Texaco, Inc.* v. *Board of Adjustment*, 73 N.J. Super. 313, 179 A.2d 768. In *Zoning Board of Adjustment* v. *Dragon Run Terrace, Inc.*, Del. , 222 A.2d 315, the court, noting that some authorities support the view that lack of need will not alone justify refusal of an exception, expressly refrains from deciding the issue. 2 Rathkopf, *The Law of Zoning and Planning* (3d ed.) 1967 Cumulative Supplement 54-18, pp. 154-159.

[5]The enabling legislation (P. L. 1921, chap. 2069, as amended by P. L. 1923, chap. 430, sec. 2, now G. L. 1956, §45-24-13) provides in pertinent part as follows: "The city council * * * shall provide that said board of review may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance * * * *where such exception is reasonably necessary for the convenience or welfare of the public.*" (italics ours)

view, the word "convenience" was not intended, and indeed could not have been intended, to be applied in the "zoning sense" inasmuch as in the early 1920's when the statute was enacted, there were only a few zoning cases and but little in the texts to furnish a context from which to obtain that sense. Moreover, the argument continues, if the legislature had intended to be concerned only with conventional police power considerations, it would not have used the word "convenience," but instead, in order to leave no doubt as to its purpose, it would have provided that the grant of an exception should be directly tied to the "* * * public health, safety, morals or general welfare" as the appropriate standard. That would have been unmistakable police power language. It was, moreover, familiar language to the legislature having been used by it in the general purposes clause of the enabling legislation. P. L. 1921, chap. 2069, sec. 1, now §45-24-1, as amended. With such language available, why, then, the argument concludes, resort to the word "convenience" whose meaning at the time of the enactment of the enabling legislation, although commonly understood, at least in the area of public utility law, as referring to that which was fitting or suitable to the public need,[6] was either unknown or little known in zoning contemplations.

---

[6]While *Abbott* v. *Public Utilities Comm'n,* 48 R. I. 196, 136 A. 490, concerned an application for a certificate of public convenience and necessity to operate jitneys, it has nonetheless been quoted in zoning decisions outside of this state as authority for what is meant by "the public convenience" requirement. See *Long* v. *Board of Zoning Appeals,* 134 Ind. App. 97, 182 N.E.2d 790; *West Hartford Methodist Church* v. *Zoning Board of Appeals,* 143 Conn. 263, 121 A.2d 640. Its definition follows:

"The expression 'public convenience and necessity' has not a well defined and precise meaning. 'Convenience' is not used colloquially in the statute as the appellant appears to consider. It is not synonymous with 'handy' and 'easy of access' although the question of ease of access may well enter into the determination of the public's convenience. 'Convenience' shall be given an interpretation in accord with its regular meaning of 'suitable', 'fitting', and 'public convenience' has reference to something fitting or suited to the public need."

The justification for the *Center Realty* approach rests primarily on the theory that the basis of the authority, state or local, to limit a person's use of his real estate by zoning legislation is the police power, and that any such legislation as well as any actions taken pursuant thereto, must therefore bear a substantial relationship to the health, welfare, safety or morals of the public. Such a view does not tolerate regulation of competition under the guise of zoning.

An additional reason is the peculiar nature of special exceptions. They might have been better and more accurately designated, if, as suggested in *Tullo* v. *Township of Millburn*, 54 N. J. Super. 483, 490, 149 A.2d 620, 624, they were called "special uses" or "special use permits." By definition, such a use is one which the local legislature has conditionally permitted and has thereby, at least implicitly, found to be harmonious with those uses which are permitted in the district. Of course, compliance with the prescribed preconditions is necessary to the establishment of a conditionally permitted use, but those conditions are addressed to where it will be located rather than to its desirability. Rathkopf, in urging this rationale says:

> "The denial of a permit to establish a use which has been legislatively found to be compatible with other permitted uses, only on the ground that it does not serve public convenience, or conversely, the grant of a permit on the ground that it *would* serve public convenience, without, in either case, consideration of public health, safety and general welfare as related to zoning considerations, seem to be entirely inconsistent with the purposes of zoning and the device of a special exception use. A particular use should not be permitted, although incompatible in a particular location, on the sole justification of convenience to the public, nor should it be excluded for lack of proof that there is a public demand (as distinguished from public necessity, as in the case of utilities) for its establishment." 2

Rathkopf, *The Law of Zoning and Planning* (3d ed.)
1967 Cumulative Supplement, 54-18, p. 158.

Neither the "public need" nor the *Center Realty* argument is airtight; nor is either so compelling or so supported by public or social policy that it overrides whatever persuasive force the other may have. It is, however, important, and indeed essential, that we decide between the two. The public, the zoning boards and the bar are entitled to know how the "public convenience and welfare" precondition will be construed and what are to be the guidelines for the grant of an exception. In making the election between the two views, the court on balance is inclined toward the *Center Realty* approach.

We hold, therefore, that an application for an exception for a particular use should not be denied either for lack of proof that there is a community or a neighborhood need for its establishment or because the proof is that there is no such need; nor should such a use be permitted on the sole ground that it will serve the community or neighborhood needs or accommodate the public. The rule, henceforth, shall be that satisfaction of a "public convenience and welfare" precondition will hinge on a showing that a proposed use will not result in conditions that will be inimical to the public health, safety, morals and welfare.

It would be manifestly unfair to any who may have relied on the "public need" decisions to apply the rule we announce today retroactively. A remonstrant, for example, may not have offered evidence, even though available, that the use applied for would create traffic congestion or a fire hazard, because, relying on the "public need" decisions, he felt secure in the knowledge that the persuasive effect of the proof he had adduced on the lack of a community need for the proposed use would mandate a denial of the pending application. Therefore, while this decision will be the rule in this case it will not be fully applied except prospectively. In order to insure, moreover, that all who may be

affected shall obtain fair notice of the new standard, the rule in this case will be fully applied only to those zoning board decisions which are filed subsequent to July 1, 1968. In reviewing decisions filed prior to that date, we will quash, but without prejudice, if the refusal to grant relief is premised on "public need" grounds and is without other basis valid in law. This procedure will furnish an applicant, whose petition for an exception may have been so denied, an opportunity to reapply and to have his petition determined under the guidelines adopted today; and it will at the same time guarantee to the remonstrant a hearing at which he can present evidence thought superfluous at the prior hearing where "public need" was deemed the determinative issue.

There is another facet to this case which, although it poses no problem, is nonetheless dispositive. Except for the single finding that the public's gasoline service station needs are amply met and therefore the public convenience and welfare not served by the proposed use, the board's decision contains neither factual determinations nor the reasons why relief was denied. Such a decision is fatally defective, when, as here, the competent evidence and the inferences logically flowing therefrom and reasonably viewed reveal a conflict in whether or not the operation of an automobile service station on petitioners' premises would create traffic congestion or otherwise aggravate an already acute traffic problem. The lessening of congestion in the streets is, of course, one of the purposes which constitutionally justifies the exercise of the zoning power, and as we have construed that purpose, a proposed use will not serve the public convenience and welfare except upon demonstration that it will not create traffic congestion or hazards in the area. The board's failure to resolve the evidentiary conflict on this essential element makes it impossible for us either to approve or to disapprove what has been done. *Coderre* v. *Zoning Board of Review,* 102 R. I. 327, 230 A.2d 247; *Hopf*

v. *Board of Review,* 102 R. I. 275, 230 A.2d 420; *Carter Corp.* v. *Zoning Board of Review,* 103 R. I. 515, 238 A.2d 745.

The petition for certiorari is granted, and the decision of the respondent board is quashed without prejudice to the right of the petitioners to reapply for relief under the terms of the ordinance.

*Letts & Quinn, Daniel J. Murray, Jerome B. Spunt, Francis M. Kiely,* for petitioners.

*Carl B. Lisa,* Town Solicitor, *Joseph R. DiStefano,* for respondent.