DECISION
This case is before the Court on the plaintiff's appeal from a decision of the Zoning Board of Review of the City of Warwick. The review board granted the application of the defendants Caffino, Inc. (Caffino) and Ann Hope of Rhode Island, Inc. (Ann Hope) for a special use permit and also for dimensional variances. Jurisdiction is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-69.
FACTS AND TRAVELS
Caffino is a California corporation that operates drive-thru expresso retail facilities in various states. It is planning to construct and operate such a facility at 1689 Post Road in Warwick, Rhode Island on a portion of property which is owned by Ann Hope. A A Donuts, Inc. (A A Donuts) leases property directly across the street from Ann Hope's property where it operates a coffee and doughnut retail business popularly known as Dunkin Donuts.
The subject property consists of two contiguous lots, Lots 209 and 210 on Assessor's Plat 322, which are owned by Ann 
Hope. The property is zoned "General Business" under the Warwick zoning ordinances. There presently exist several nonresidential uses and buildings on the property. There is Ann Hope's department store and its associated garden shop, an attached discount warehouse, a small freestanding produce market, and a freestanding Firestone automotive repair facility. (Dec. at 1). A substantial portion of the property exists as a parking lot. (Petitioner's Exhs. A1 and A2).
Caffino seeks to construct a 264 square-foot freestanding pavilion on Ann Hope's parking lot close to Post Road. (Tr. at 3). The building, which measures approximately 11' x 24', will be used as a drive-thru expresso and coffee shop. (Tr. at 3-4). The plans submitted as part of this record show that there will be two drive-thru lanes, one on each 24-foot length of the structure. There is also a walk-up service window, but the record indicates that based on Caffino's other locations, the majority of the sales will be derived from drive-thru customers. (Tr. at 5).
Under the pertinent zoning ordinance, more than one nonresidential structure is allowed on a single lot in nonresidential districts if the structures are devoted to the same actual use. See Ordinance § 304.5. Where, as here, more than one permitted use on a lot is proposed, applicants must obtain a special use permit. Id.
On July 17, 1995, Caffino applied to the Zoning Board of Review for a special use permit pursuant to subsection 304.5 of the zoning ordinances to allow Caffino to build an additional business structure on the Ann Hope parking lot. Caffino also sought relief from landscaping and screening requirements, open space requirements, and requirements relating to loading space, parking spaces, and maximum size of business signs.[1]
A public hearing on Caffino's application was held on August 8, 1995, for which due notice had been given. At the hearing Caffino supported its application with plans and drawings of the proposed facility, a brochure showing a uniform image of existing Caffino facilities in other states, the report and curriculum vita of a traffic engineer, and the testimony of a Caffino consultant. A A Donuts objected to Caffino's application, presenting the testimony of a real estate expert and that of the owner of the Dunkin Donuts franchise. The board viewed the property and the surrounding area. Taking into consideration its knowledge and expertise, its view, and the evidence presented at the hearing, the board granted the special use permit for the additional nonresidential structure and granted the remaining relief requested by Caffino. (Dec. at 3).
STANDARD OF REVIEW
Superior Court review of a zoning board decision is controlled by General Laws 1956 (1991 Reenactment) § 45-24-69
(D) which provides:
 "45-24-69. Appeals to Superior Court
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 "(1) In violation of constitutional, statutory or ordinance provisions;
 "(2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a Justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou, 120 R.I. at 507, 388 A.2d at 824-25).
SPECIAL USE PERMIT
A special use permit will be granted where it is shown that neither the proposed use nor its location on the site will result in conditions that will be detrimental to the public health, safety, morals and welfare. Hester v. Timothy, 108 R.I. 376, 385-86, 275 A.2d 637, 641-42 (1971) citing Nani v. Zoning Bd. ofSmithfield, 104 R.I. 150, 156, 242 A.2d 403, 406 (1968). The Court finds ample evidence on this record that shows that Caffino has satisfied this pre-condition.
At the hearing, Caffino submitted into the record a traffic engineering report prepared by its expert, E. Raymond Crossman (Crossman) who is a licensed professional engineer with expertise in traffic engineering. (Tr. at 1-2). Crossman noted that the proposed facility will occupy an underutilized portion of the existing Ann Hope parking lot, and will result in a loss of six of the existing parking spaces. (Petitioner's #1 at 4). He concluded that the loss of the parking spaces would not have an inverse effect on existing operations on the property. Id. He also concluded that the location of the structure will limit interference with vehicles entering the premises for Ann Hope and would not cause congestion in the parking lot. Id. at 4, 6.
Based on information collected at existing Caffino establishments, Crossman projected that 40 percent of the vehicles driving through the proposed facility would do so between 6 a.m. and 9 a.m., with 61 percent driving through between 6 a.m. and noon. Id. at 5. He compared this to the peak activity period of a typical neighborhood shopping center which occurs between 3 p.m. and 6 p.m., during which time existing Caffino facilities attract only approximately 20 inbound vehicles. Id. at 5. He noted that only 2 percent of daily shopping center traffic occurs during the peak hours of Caffino's operations. Id. at 6. He further reported that existing Caffino facilities do not generate new traffic because 86 percent of Caffino's customers are "pass by commuters" or "diverted trips."Id. at 5. He noted also that access to the proposed facility will be by way of existing curb cuts presently used to enter the Ann 
Hope parking lot from Post Road either by free right turn or by an existing traffic signal. Id. at 6. Egress will be also via an existing traffic signal. Id. He reported that the flow of traffic at the traffic signals would continue to operate at its present level. Id. 7. Crossman concluded that the proposed Caffino facility would have no detrimental impact on traffic patterns on Post Road or on adjacent streets, that any increase to the existing traffic would be minimal, and that it would not contribute to congestion or conflict in the parking lot itself.Id. at 6, 7.
A consultant for Caffino, Charles Devine (Devine), testified at the hearing. He described the building and the proposed operations. (Tr. at 3-9). He testified that the building would contain an area for approximately five employees who would prepare coffee, and who would serve customers primarily through the two drive-thru windows. (Tr. 5, 9). He also testified that the coffee shop would operate seven days per week between 6 a.m. and 9 p.m., with peak hours being between 7 a.m. and 9 a.m. (Tr. at 3-4, 9). He stated that in addition to expresso coffee, other types of coffee would be available, as well as morning and afternoon snacks. (Tr. at 4).
Devine stated that although there will be a walk-up service window with a sidewalk, the majority of Caffino's sales will be to drive-thru customers. (Tr. at 5). He also testified that there will be an employee restroom inside the facility, and that the building will satisfy requirements for the handicapped. (Tr. at 3-4, 7). There will be no available seating for customers inside the facility. (Tr. 5, 7).
The evidence substantially demonstrates that the nature and size of the proposed facility, the marginal effect on traffic patterns on Post Road and in the existing parking lot, and the location of the facility in the parking lot would not be detrimental to the public health, safety, morals and welfare.
At the hearing, A A Donuts presented Thomas Sweeney (Sweeney), who is a real estate appraiser, and also presented Paul Amirault (Amirault), the owner of the Dunkin Donuts operation across the street from Ann Hope. Amirault testified that Dunkin Donuts' rent is based on a percentage of its sales. (Tr. at 15). He stated that Dunkin Donuts derives 50 percent of its business from drive-thru sales and estimated that it would suffer a 25-30 percent loss of that business if the proposed Caffino opened for business. (Tr. at 15, 19). His testimony was not supported by factual data, however. Based on Amirault's opinion, Sweeney testified that the loss of business would result in a 20-30 percent loss in property value. (Tr. at 21). It is apparent from the board's decision and the colloquy on the record that the board was not persuaded by this testimony, noting that A A Donuts was in actuality objecting to increased competition. (Tr. at 15-16).
Subsection 906.3 of the zoning ordinances further provides standards which must be satisfied for the granting of a special use permit. That section states in pertinent part:
 "906.3 Standards for relief.
 "* * *
 "(C) Special use permit. In granting a special use permit, the board shall require that evidence to [of] the satisfaction of the following standards be entered into the record of the proceedings:
 "(1) That the special use is specifically authorized by this ordinance, and setting forth the exact subsection of this ordinance containing the jurisdictional authorization;
 "(2) That the special use meets all of the criteria set forth in the subsection of this ordinance authorizing such special use; and
 "(3) That the granting of the special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this ordinance or the comprehensive plan of the city."
Applying these standards to the instant case, this Court finds that legally competent evidence exists in this record to support the granting of a special use permit for the additional nonresidential structure on the Ann Hope property. Such a special use permit is specifically authorized by Subsection 304.5 of the zoning ordinances which provides:
 "304.5. More than one nonresidential use or building on a lot. More than one nonresidential structure may be allowed on a single lot within appropriately zoned nonresidential districts if devoted to the same actual use. Upon application to the zoning board of review, a special use permit may be granted in accordance with subsection 906 of this ordinance, where more than one actual use on a lot may be requested, provided however that such uses shall be only those that are permitted within the district in question. In both instances, principal front and rear walls of a building shall be at least 40 feet from any wall of another building. Any side wall of a building may not be less than 25 feet from any side wall of another building."
The proposed facility meets all the criteria of this subsection: the proposed use is a permitted use in a "General Business" zone, (Dec. at 3), and the location of the structure on the property complies with the distance requirements in relation to other buildings on the premises. Additionally, the board concluded that the proposed facility would not alter the general character of the surrounding area. (Dec. at 3). This conclusion is supported by the board's finding of fact that the surrounding area consists of retail, service, office, automotive and restaurant operations, and that there are retail and service operations located on the property itself. (Dec. at 2, 3). The zoning board properly considered these facts and knowledge which were acquired through observation on a view and which were disclosed in the record. SeeToohey v. Kilday, 415 A.2d 732, 737 (R.I. 1980). The board also found that the subject property contains more lot than other businesses in the area. (Dec. at 3).
Caffino is proposing to erect and operate its facility on a portion of the property which presently exists as Ann Hope's parking lot. Therefore Caffino also sought relief under Subsection § 304.3 of the zoning ordinances which states: "No part of a yard, parking space, or other open space required for any building or use . . . shall be included as part of a yard, parking space or other open space required under this ordinance for another use or building except as provided in subsection 701.5." Ordinance § 304.3. Subsection 701.5 prohibits shared off-street parking, ". . . unless allowed by the zoning board of review as a special exception pursuant to subsection 906 of this ordinance and provided that the board determines that the type of structures or uses indicate that the period of usage of such structures or uses will not be simultaneous." Ordinance § 701.5.
Like a special use permit, the special exception must satisfy the pre-condition that the proposed use must not be detrimental to the public health, safety, morals and welfare, and as already discussed, Caffino has satisfied this condition. The record indicates that the proposed use will be primarily for drive-thru retail sales and service, and that no seating is available to customers inside the facility. This evidence supports the granting of this relief, as the need for parking spaces for Caffino's customers is marginal. Moreover, the engineer's analysis of the respective peak hours of operation of Caffino and of Ann Hope, and his finding that the portion of the existing parking lot to be allocated to the proposed facility is underutilized as such, are competent evidence that the use of that portion of the parking lot for Caffino's operations will not be simultaneous with its use for Ann Hope's operations.
Therefore, the zoning board's decision granting Caffino relief under subsections 304.5 and 304.3 of the zoning ordinances was supported by reliable, substantial and probative evidence.
DIMENSIONAL VARIANCES
Caffino applied for relief from landscaping and screening requirements, and from requirements under the ordinances relating to wall signs, loading spaces, and open spaces. A A Donuts contends that Caffino failed to demonstrate the requisite hardship, and that the board erred in granting the relief sought. However, upon examination of the record as a whole, the court finds substantial evidence that supports the granting of the variances.
Where an applicant seeks relief from regulations which govern a permitted use, it need only be demonstrated that strict adherence to the regulations will create an adverse impact amounting to something more than a mere inconvenience to the applicant. Viti v. Zoning Bd. of Review of the City ofProvidence, 92 R.I. 59, 64-65, 166 A.2d 211, 213 (1960) Literal enforcement would preclude the full enjoyment of the permitted use. Westminster v. Zoning Bd. of City of Providence,103 R.I. 381, 387, 238 A.2d 353, 357 (1968).
The proposed use is a permitted use in the district, which is zoned "General Business." This is so, even though a special use permit is required. The proposed use, a retail coffee shop, is not a use which is merely conditionally permitted in a "General Business" zone. Indeed, subsection 304.5 of the zoning ordinances makes it clear that the special use permit under that subsection authorizing additional nonresidential structures on the same lot is limited to proposed uses which are permitted uses within the applicable district. See Ordinance § 304.5. Therefore, the zoning board applied the proper standard in granting dimensional variances in this case.
The standards to be applied in granting variances are set forth in Subsection 906.3 which states:
 "906.3. Standards for relief.
 "(A) All variances. In granting a variance, the board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceeding.
 "(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and not due to a physical or economic disability of the applicant;
 "(2) That said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 "(3) That the granting of the requested variance will not alter the general characteristic of the surrounding area or impair the intent or purpose of this zoning ordinance or the comprehensive plan of the city;
 "(4) That the relief to be granted is the least relief necessary.
 "(B) Different standards for use and dimensional variances. The board shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that:
 " * * *
 "(2) In granting a dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief.
Caffino proposes to place a wall sign on each of the four sides of the proposed facility. The total area of the four signs exceeds the maximum area for business signs set forth in Subsection 806.3 of the zoning ordinances. The record indicates that the four-sided signage and the size of the signs for the proposed Caffino are consistent with the standard signs used at existing Caffino facilities, and is part of a uniform image for the company. In granting the variance, the board stated that many signs in the immediate area are much larger than those proposed by Caffino, and stated that the signs are standard signs for the Caffino franchise in its other locations. (Dec. at 3). The signage is no larger than the standards for the franchise, and the relief granted is the least relief necessary. The zoning board had before it evidence that a denial of the requested relief would be a hardship which amounts to more than mere inconvenience, as it would cause Caffino to deviate from its national uniform image.
Subsection 701.6 of the zoning ordinances requires loading spaces or docks for structures used for commercial purposes. The evidence shows that the structure is small and that the operations are limited. In granting the relief from loading space requirements, the board found that due to the size of Caffino's business operation, loading docks were not required. (Dec. at 3). Thus, based on the evidence, the board properly determined that the denial of the requested relief relating to loading spaces would create more than a mere inconvenience, as Caffino would otherwise be obliged to install a loading dock which would have no utility.
Finally, Caffino sought relief from requirements of open space landscaping, landscaping and screening requirements, and landscaping requirements for interior parking spaces. The uniqueness of the proposed site as can be seen from the evidence is that the site is an existing parking lot, presumably improved, paved, and surfaced for that purpose. The board stated: "[T]he denial of this request would create more than a mere inconvenience for the petitioner because the subject property is existing without the proper landscaping and screening." (Dec. at 3). The board noted that Caffino would provide some landscaping.Id. Thus, the court finds there was evidence before the board that a denial of the relief requested relating to the installation of landscaping and screening, under the circumstances, would create an adverse impact amounting to more than a mere inconvenience.
For the foregoing reasons, this Court finds, after reviewing the entire record, that the decision of the zoning board was based on reliable, probative and substantial evidence, and that the granting of the relief sought was proper. Accordingly, the appeal of A A Donuts is dismissed and the decision of the zoning board is affirmed.[2]
Counsel shall prepare an order consistent with the decision of this Court.
[1] The plans admitted into this record show that the two drive-thru lanes each measures 8'7" wide, which is less than the 11-foot width required under subsection 701 of the zoning ordinance. However, Caffino's application did not request relief from these requirements, and the notice sent to abutters, as well as the publication of the notice in a local newspaper, did not include a request for relief from subsection 701. The review board found as a fact that the drive-thru lanes were less than required under the ordinance. While the Court affirms the decision of the board, the Court notes that a decision by the zoning board regarding relief from the required 11-foot width of the drive-thru lanes can only be made after Caffino applies for such relief, after proper notice to abutters and publication in a newspaper as to the specific relief sought are made, and after a public hearing thereon.
[2] This decision is subject to the Court's admonition in footnote 1 herein regarding relief from the required width of the drive-thru lanes.