DECISION
Before this Court is the appeal from a decision of the Charlestown Zoning Board of Review ("Board"). Richard Serra ("Appellant") seeks reversal of the Board's decision of January 28, 1999, denying the Appellant's application for a special use permit. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69. Per order of Presiding Justice Rodgers, this case was transferred from Washington County to Providence County for assignment and disposition.
 Facts and Travel
Richard Serra is the owner and operator of a retail business known as Rippy's Liquor Marketplace located at 4158 South County Trail, Charlestown, and designated as Lot 182 on Tax Assessor's Map 28. The lot, with a frontage of 433 feet and a depth 639 feet, occupies 5.763 acres and is zoned business/residential. Appellant operates a convenience, video, and liquor store on the site and proposes to install a three-island gas filling station. The Appellant's property is located on top of the groundwater recharge area for the Pasquiset Aquifer. The Rhode Island Department of Environmental Management ("RIDEM") has classified the aquifer as GAA, which means it contains water of highest quality which is suitable for public drinking without requiring prior treatment.
In 1994, the Appellant first filed for a special use permit from the Board to install a gasoline service island. The Appellant's original plan called for an underground storage tank for the gasoline. The Board denied the application on grounds that the plan could create a condition inimical to the public health, safety, morals and general welfare of the community. The Appellant appealed to Superior Court, and the Court upheld the Board's decision, finding that it had relied on expert testimony on the potential of environmental damage to the aquifer. See Serra v.Charlestown Zoning Board of Review, C.A. 94-5397, November 9, 1995, Williams, J.
On May 27, 1998, Appellant again filed an application for a special use permit to install a three-island gasoline filling station to be operated in conjunction with the existing convenience store. The current plan, however, differed from the 1994 proposal. The new plan called for above ground steel tanks, which would be encased in concrete. The Charlestown Zoning Board of Review held public meetings on June 16, 1998; July 21, 1998; September 15, 1998; October 19, 1998; November 17, 1998; December 15, 1998; and January 28, 1999.
The Board listened to testimony on the environmental impact of the project, the risk to the aquifer, the impact on real estate values, the impact on traffic flow, and the design and safety of the proposed plan. The Board also heard testimony from two objectors, John Russo and George Sousa. Russo owns a gas station located in close vicinity, and Sousa is the marketing representative for the company which supplies gas to Russo's station. Both witnesses objected to the Appellant's application on the ground that there was no need for another gas station in the area.
The Board also admitted into a evidence: (1) a statement by Charlestown resident John Hardiman, who worried that allowing the sale of gas and liquor at the same place was poor public policy and created an increased risk of DWI accidents; (2) an advisory opinion from the Charlestown Planning Commission, finding that the "petroleum storage tanks should not be sited in any groundwater reservoir or groundwater reservoir recharge area. . . . . The aquifer is the water supply for Town residents both today and in the future." Planning Commission, Advisory Opinion; (3) and a letter from Ernest Panciera a Principal Environmental Scientist with the DEM, stating "although the facility proposed by Mr. Serra is not prohibited by DEM regulations, it is inconsistent with DEM guidance to communities on protection of valuable groundwater resources." DEMLetter.
The Board voted 5 to 0 to deny the appellant's application, finding that "a spill could create conditions that could be harmful to community health, safety and general welfare. It also will not be in harmony with the general purpose and intent of the Zoning Code. Decision Letter at 3. The Board also cited public convenience in its decision: "If there were not any other gas stations in that area, I [sic] might be more disposed to approve because you could make a case to the fact that the public convenience would be served by another gas station. . . . ." DecisionLetter at 2.
Appellant filed a timely appeal on February 18, 1999. On appeal, Appellant argues that the decision: (1) violated applicable statutory provisions, as well as provisions of the Charlestown Zoning Ordinance; (2) was affected by error of law; (3) was clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; (4) was arbitrary, capricious and characterized by abuse of discretion and is clearly an unwarranted exercise of the Board's discretion.
 Standard of Review
General Laws § 45-24-69(D), which directs this Court in its review of a decision of the Zoning Board of Review on appeal, provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court must determine, upon review of the record, that substantial evidence exists to support the Board's decision. Salve Regina College v.Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla, but less than a preponderance."Caswell v. George Sherman Sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 824-25 (R.I. 1978)). Furthermore, this Court cannot substitute its judgment for that of the Board, but must uphold a decision supported by substantial evidence contained in the record. Mendonsa v. Corey,495 A.2d 257 (R.I. 1985).
 Special Use Permit
An applicant for a special use permit must demonstrate that the relief sought is reasonably necessary for the convenience and welfare of the public. Toohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980). The applicant need not show there is a community need for the permitted use, but must show that "neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare and morals." Toohey v. Kilday, 415 A.2d at 736 (quoting Hester v. Timothy,108 R.I. 376, 385-86, 275 A.2d 637, 642 (1971)). A zoning board, however, may not "deny granting a special exception to a permitted use on the ground that the applicant has failed to prove that there is a community need for its establishment." Salve Regina College v. ZoningBoard of Review of the City of Newport, 594 A.2d 878, 880 (quotingToohey 415 A.2d at 735). Traditionally, considerations of public health and safety are afforded the greatest weight when reviewing a zoning board's decision to grant or deny a special exception. Mendonsa v.Corey, 495 A.2d 257, 263 (R.I. 1985). "The rule, [is] that satisfaction of a `public convenience and welfare' pre-condition will hinge on a showing that a proposed use will not result in conditions that will be inimical to the public health, safety, morals, and welfare." Nani v.Zoning Board of Review of Smithfield, 104 R.I. 150, 242 A.2d 403, 406 (1968).
 Public Convenience
Appellant asserts that that the Board's decision was clearly erroneous and against the weight of the evidence presented at the hearings. He argues that the public convenience and welfare will be substantially served by the addition of the proposed gas station.
The Appellant presented a real estate expert and traffic expert in support of his application. Michael Lenihan, a real estate expert, testified that, "competition tends to keep prices down. The public convenience and welfare is usually served through competition." HearingTranscript 3 at 18. Richard Bernardo, an expert in the area of traffic engineering, also testified that in the worst case traffic scenario the "peak-hour volume would increase from 500 to 520 vehicles. This volume is well within the safety and capacity of the roadway." Hearing Transcript3 at 24.
The Board also heard testimony from two objectors, John Russo and George
Sousa. Mr. Russo, who owns a nearby gas station, testified that, "there is no need and necessity for another filling station on Route 2, approximately one fourth to a half mile from the two stations already providing full and self service. JR's Citgo is operating at forty to fifty percent of capacity. We can continue to serve the public need." HearingTranscript 3 at 105. Sousa, a marketing representative for Mutual Oil Company, which provides Russo's gasoline, also testified that there was no need for another gas station.
In its decision, the Board concluded, "I [sic] can not see that the public convenience and welfare will be substantially served. By no stretch of my imagination, there are 2 gas stations, within 1/2 a mile, there are 3 others in a 5 mile radius. In no way would this substantially serve the public interest." Decision Letter at 1. A zoning board may not "deny granting a special exception to a permitted use on the ground that the applicant has failed to prove that there is a community need for its establishment." Salve Regina College v. Zoning Board of Review of theCity of Newport, 594 A.2d 878, 880 (quoting Toohey, 415 A.2d at 735). Thus, the Board's rejection of the application on the basis of public need was erroneous. Furthermore, it is well established that "lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect to an application to the zoning board of review for a special exception." Toohey, 415 A.2d at 737. In this case, both objectors, whose business would be in direct competition with that of the Appellant's, had a very strong self-interest in objecting to the Appellant's application. While they may have been in error, the Board did not rest its decision on public need grounds alone. The Board went on to analyze the impact of the proposal on the community's health, safety, morals, and general welfare.
 Public Health, Safety, Morals and General Welfare of the Community
Appellant further asserts that the Board's decision was clearly erroneous and against the weight of the evidence presented at the hearings. At the hearings, the Appellant presented extensive testimony on the safety and design of his proposal. In its decision, the Board noted, "I [sic] find this a very difficult decision to make because the extent to which the applicant has gone is very impressive. The fact that they apparently explored every facet if[sic] this kind of an endeavor."Decision Letter at 2.
The Appellant's proposal calls for above ground steel tanks which would be encased in concrete. Phil Vitali, a salesperson for United Concrete Products, a company which manufactured the tanks, testified: "there are 22,000 of [the proposed tanks] nationwide. The oldest tank is 12 years old, and there are no reported failures." Hearing Transcript 2 at 31. Appellant also called, David Heffron, as expert in the field of installation of underground and above-ground storage tanks and construction of gasoline tanks. Heffron testified that in his twenty-year experience of installing tanks, he had never been involved in a leak or breach of an above ground tank. Hearing Transcript 3 at 36.
Appellant also called James Begley, an environmental engineer, to testify on the Board's concerns about potential leaks. Begley testified that the proposed system would "actually find a leak before it has time to migrate down to the water table . . . . It's not just the monitoring system where you're testing groundwater; it's something where you could take a response action before contamination made it down to the water table." Hearing Transcript 3 at 67.
The Board, however, also heard expert evidence on the potential dangers of the project. In an advisory opinion, the Town Planning Commission opposed the Appellant's proposal because of the risk to the Town's water supply. The Planning Commission concluded:
 "Numerous non-community public and private wells are located within this groundwater recharge area. Such wells serve the water need of many residential and transient populations. The contamination of such wells could cause major health problems, disruptions in service, inconvenience lives, and threaten property values to the numerous people who live, travel, and work within this area. . . . . The proposed facility will be handling large quantities of petroleum products and, therefore, the risk of leaks and spills because of human error and accidental events cannot be avoided." Planning Commission Advisory Opinion at 1-2.
The Board also relied on a letter from Ernest C. Panciera, a Principal Environmental Scientist with the Department of Environmental Management. Panciera wrote:
 "The proposed facility is located within an area that DEM has classified GAA. Groundwater classified GAA is provided the highest level of protection by DEM in order to maintain drinking water quality. The facility's design and operation must be in compliance with the DEM "Oil Pollution Control Regulations," which have more stringent requirements for facilities where the groundwater is classified GAA . . . . Although the facility proposed by Mr. Serra is not prohibited by DEM regulations, it is inconsistent with DEM guidance to communities on protection of valuable groundwater resources. By proposing an above ground storage tank that is widely accepted as the state of the art in above ground tank technology, Mr. Serra has taken significant steps to mitigate the threats to groundwater normally associated with a gasoline filling station. However, threats remain from the underground piping, filling and dispensing of fuel, and overall operation and maintenance of such facility." DEM Letter.
The Board also retained the firm of Levine Fricke to assess the risks from the proposal. Its report concluded, "it is our opinion, based on the documents reviewed and based on the sensitivity of the area, that the proposed filling station poses a risk of potential adverse impact to the RIDEM classified GAA aquifer beneath and surrounding the site." LFRReport at 5.
The Appellant further contends the DEM's letter was based on an incomplete review of the application as a whole, without analysis of the specific safeguards proposed by the Appellant. Appellant argues that Mr. Panciera ignored the DEM regulation, which stated: "the threat posed by facilities within a category varies depending on the safeguards or best management practices that are to be utilized to prevent contamination."Inventory of Potential Sources of Groundwater in Wellhead ProtectionAreas — RIDEM Guidance Document at 13. This Court, however, will not substitute its judgment for the Board. Furthermore, in situations where
 "[t]here is conflicting testimony from equally qualified experts and substantial evidence exists on both sides of the controversy, we believe that the better rule is to limit the extent of judicial review. In such circumstances, we believe that the board, who had before it the individual witnesses and had the opportunity to judge their credibility, was in a better position than the court to resolve the conflict. In our opinion this conclusion is consistent with the language of § 45-24-20 prohibiting the weighing of evidence on questions of fact." Mendonsa v. Corey, 495 A.2d 257, 263 (R.I. 1985).
The record demonstrates that the Board reviewed the contents of the DEM regulations. Pursuant to § 45-24-30(13), one of the purposes of a zoning ordinance is to provide coordination of "land uses with contiguous municipalities, the state, and other agencies, as appropriate, especially with regard to resources and facilities that extend beyond municipal boundaries or have a direct impact on that municipality." In the instant matter, the proposal has a direct impact on the water supply of the municipality, and if the aquifer were contaminated, the impact would extend well beyond the municipality. In its analysis and conclusions, the Board did take into account the safety measures proposed by the Appellant. The proposed safety measures, however, were not enough to outweigh the Board's concern about contamination of the aquifer. The Board stated:
 "The length and effort to make this a safe station seems to be that he has gone above and beyond the need for safety in a normal area. The problem here being that this is not a normal area. As stated by the DEM, this GAA quality is the most protected recharge areas for the local aquifer. We have asked for risk factors from many of the experts that have testified here. No one could come up with one in ten thousand, one in a million, one in ten million. The only thing that could be said is that a risk would always exist." Decision Letter
at 3.
The Board's conclusions were not arbitrary. The decision was supported by substantial and probative evidence. The DEM report, the Planning Commission advisory opinion, and Levine Fricke assessment report all concluded that the project posed a risk to the aquifer. Although the Appellant may not agree with the Board's assessment of the evidence and the witnesses, this Court will not substitute its judgment for that of the Board. The Board had before it competent evidence to conclude that the project was inimical to the public, health, welfare, and safety.
 Conclusion
After a thorough review of the entire record, this Court finds the Board's decision was supported by substantial evidence, that the proposed use or its location would have a detrimental effect upon public health, safety, welfare and morals. The Board's conclusion was not arbitrary or affected by error of law. Its decision was based on substantive and probative evidence on the record. Substantial rights of the Appellant have not been prejudiced. Accordingly, the decision of the Board is affirmed. Counsel shall prepare an appropriate order for entry.