DECISION
Before the Court is the Appeal filed by Appellants Meredith A. Skelly, Kenneth J. Skelly, and Ramona M. Skelly (collectively, "Appellants"), from a Decision (the "Decision") of the Zoning Board of Review for the Town of Barrington (the "Board") granting an application for a for a special use permit filed by Montessori Centre of Barrington, Inc., [1] and Montessori on Sowams, LLC[2] (collectively "Montessori"). The special use permit authorizes Montessori to expand its existing use and modify its parking plan. For the reasons set forth in this Decision, this Court affirms the Decision of the Board. Jurisdiction is pursuant to § 45-24-69, as the Appeal was timely filed. *Page 2 
 I Facts and Travel
Montessori operates a private school for up to thirty children at any given time.[3] The school operates on the first floor of property located at 303 Sowams Road in the Town of Barrington, and otherwise known as Assessor's Plat 30, Lot 64. The property is located in a Neighborhood Business Zone ("NB Zone"). As a "private school," it only is permitted by way of a special use permit within the NB Zone. See Section 185-8(E) of the Barrington Zoning Ordinance ("the Ordinance"). As such, any increase in that use also requires a special use permit. Seeid.
In 2006, Montessori applied for a special use permit seeking relief from Section 185-8(E) of the Ordinance in order to expand the existing use to facilitate up to sixty students. The expansion would not require any exterior alterations to the building because the additional students would be housed on the second floor which is currently vacant. Previously, the second floor had been used as a ballet/dance studio; however, the studio has not operated since 2005. Due to the existing configuration of the site, Montessori also requested relief from the parking lot construction standards contained in Section 185-79 D and E of the Ordinance. Section 185-79 D requires that parking adjacent to a street must be separated from the street by a curb at least six inches in height, and Section 185-79 E requires the existence of a planting strip between the parking area and the street.[4] *Page 3 
The initial development plan was reviewed by the Planning Board. After a hearing, the Planning Board voted to deny the development plan, without prejudice, and recommended that the Board deny the application for the special use permit. Montessori appealed the decision to the Board sitting as the Planning Board of Appeals. After a hearing, the Board of Appeals denied the appeal. Montessori then appealed to Superior Court.
After reviewing the record, the Superior Court, in an opinion by Ms. Justice Savage, reversed the Planning Board's decision, holding that its decision was erroneous based on the uncontroverted expert testimony presented by Montessori. The Court also criticized the Planning Board's failure to make factual findings based on its members' undisclosed observations of the site, as well as its failure to make findings concerning the evidence of traffic and parking. Montessori's application was remanded to the Board for it to "consider the application for a special use permit on its merits as if a positive recommendation had been made by the Planning Board." Accordingly, Montessori submitted its application for the special use permit to the Board for a hearing. It is the decision of the Board relative to the application for special use permit, which forms the basis for this appeal.
The hearing on the application began on May 21, 2009. First to testify on behalf of Montessori was expert Todd Chaplin ("Mr. Chaplin"), President of Mount Hope Engineering, who made changes in 2009 to the original site plan designed by a Professional Engineer Skyler *Page 4 
Mills ("Mr. Mills").[5] Mr. Chaplin explained that the only change in the property proposed by this application is to pave an area to create five additional parking spaces, and to construct a small grass swale to accommodate a change in runoff.
Counsel for the Appellants questioned whether it was appropriate to submit an updated site plan with no notice given to the abutters, and without this updated plan being reviewed by the Planning Board. The Board, however, found that the changes were not substantial and chose to proceed. The Court finds no error in that decision of the Board, since the updated plan was presented at the hearing and Mr. Chaplin's testimony concerning the updated plan was subject to cross examination.
Rey-Ann Garcia Mills ("Ms. Garcia Mills"), director and owner of the Montessori school, testified concerning the services offered by the school and the reasons for expansion. She testified that through the expansion, the school would service a wider age range of children, and would consolidate two locations into one by expanding operations onto the second floor of the Sowams Road property. She described a need within the community for the services provided by the school. She also testified to the use and success of a morning drop-off system and how it would be extended to fit the needs of the expanded school. Board members expressed concern about the proposed parking being disrupted during the drop-off period, and previous trouble with snow removal from the property.
Paul Banyon ("Mr. Banyon"), President of RAB Professional Engineers, Inc., was presented as an expert witness by Montessori to explain the Traffic Analysis conducted by his firm at the site. He testified concerning the proposed drop-off plan in the morning and about its safety and efficiency. He also testified that the current parking was adequate for the facility. In *Page 5 
the 2005 traffic study, presented to the board in the form of a report, he concluded that while the addition of 30 more students would increase the volume of traffic during peak periods, this increase would not change or negatively affect the good operating conditions that presently exist in this area. He testified that he has visited the site on numerous occasions to confirm that the conditions that existed at the time of his study were still applicable. He testified as to the success and efficiency of the existing drop-off plan, and it was observed that the drop offs would be staggered over the one-hour period in an effort to maintain such efficiency.
Hearings on the matter were continued to June 18, 2009. Professional Engineer Mills was the first to testify at the June hearing. He testified that he originally prepared the site plans for this application. Montessori also introduced correspondence from the Town's Fire Chief, Police Chief, and Public Work's Director, each of whom had reviewed the application and had no objection to the proposal.
Robert J. Moitozo ("Mr. Moitozo"), professional engineer and expert in traffic engineering, testified on behalf of the Appellants. He stated that the granting of the petition would be hazardous to the adjacent Oak Grove area. Board members questioned the foundations of his opinion on traffic conditions because he preformed only three brief site visits, and no full traffic or crash study. Peter M. Scotti ("Mr. Scotti"), real estate broker, testified for the Appellants that granting the petition would have a detrimental effect on the use and enjoyment of surrounding properties. The Board, however, questioned his lack of expertise to reach traffic conclusions in his capacity as a real estate appraiser.
The next to testify was proponent Jean Zelenzia, a parent whose two sons previously had attended the Montessori school. She expressed a need for a larger private school within the town of Barrington, particularly for working parents, because the Town does not provide any public *Page 6 
options for full day, pre-kindergarten classes. Montessori amended its application to include
relief from Section 185-80 of the Ordinance, which requires 270 square feet of area per parking space. Under the Ordinance, 5,130 square feet of parking would be required if the application for expansion were granted, while Montessori would provide only 4,955 square feet of parking.[6] Thereafter, the Board voted to approve the application by a vote of four to one, subject to certain conditions; namely, (1) that four "stacked" parking places be reserved only for employees; (2) the proposed drop-off plan between eight and nine in the morning must include retrieval of the children from the circulating cars by Montessori employees; and, (3) Montessori must make best efforts to remove snow in a timely manner from parking places and from the edge of a right-of-way. A six-page decision later was recorded in the Registry of Deeds for the Town of Barrington. The Appellants, adjoining land owners to the school, timely appealed.
 II Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides in relevant part:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the Appellant[s] have been prejudiced because of findings, inferences, conclusions, or decisions which are: *Page 7 
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Our Supreme Court requires this Court to "review [] the decisions of a . . . board of review under the `traditional judicial review' standard applicable to administrative agency actions."Restivo v. Lynch, 707 A.2d 663, 665 (R.I. 1998). Accordingly, the Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level."Id. at 665-66 (quoting Lett v. Caromile,510 A.2d 958, 960 (R.I. 1986)). In performing this review, the Court "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'"Curran v. Church Community Housing Corp.,672 A.2d 453, 454 (R.I. 1996) (quoting § 45-24-69(d)). Credibility findings also apply to conflicting opinions. See Bruce v.Weekly World News, Inc., 310 F.3d 25, 30 (1st Cir. 2002) (stating that a court sitting, "as factfinder, was entitled to make the crucial credibility determination as between the competing expert witnesses"). Accordingly, a zoning board sitting as fact finder is not obligated to accept the expert testimony as "talismanic" because, under Rhode Island law, it is free to accept or reject such testimony. See Restivo 707 A.2d at 671.
Furthermore, the Court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina College v. Zoning Bd. Of Reviewof City of Newport, 594 A.2d 878, 880 (R.I. 1991) (quotingDeStefano v. Zoning Bd. Of Review of Warwick, *Page 8 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). "Substantial evidence" is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. Of Review of North Kingston,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)).
 III Analysis
In their appeal, Appellants assert that the Board's conclusions are "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record." They maintain that Montessori did not meet its burden of proof because Mr. Chaplin did not prepare the original site plan; rather it was prepared by the husband of the owner, Mr. Mills. They then suggest that Mr. Bannon was not qualified to testify concerning traffic because he is not registered in Rhode Island as a professional engineer, and he did not prepare the parking plan. Finally, they contend that because Mr. Mills is married to the owner, he was "not a creditable expert witness." Thus, according to Appellants, the Board improperly relied on expert testimony with regard to the safety and efficiency of the parking plan and its impact on traffic that was not reliable, while ignoring reliable opposing expert testimony.
In response, the Town of Barrington avers that the Board's decision is more than amply supported by the evidence in the record. Montessori additionally contends that the decision of the Board was supported by substantial evidence in the record, and that the evidence it presented clearly addressed the standards required for a special use permit. Montessori further maintains that the Board correctly rejected the testimony of the two experts presented by the Appellants. *Page 9 
Section 185-73 of the Ordinance provides the general standards for the issuance of a special use permit. It states:
 "A use requiring a special use permit in Article IV and elsewhere in this chapter may be permitted by the Zoning Board of Review following a public hearing only if, in the opinion of the Board, such proposed use and its location on the site meets each of the following requirements:
 A. The public convenience and welfare will be substantially served.
 B. It will be in harmony with the general purpose of this chapter, and with the Comprehensive Community Plan.
 C. It will not result in or create conditions that will be inimical to the public health, safety, morals and general welfare of the community.
 D. It will not substantially or permanently injure the appropriate use of the property in the surrounding area or district." Section 185-73.
In addition to the aforementioned requirements, Section 185-75, entitled "Standards relating to off-street parking and off-street loading requirements" requires that where an applicant is requesting a special use permit and relief from off-street parking requirements, the applicant must show the following:
 "A. That, based upon projected use and level of activity for a given development proposal, strict application of the parking and/or loading requirements would be excessive.
 B. That, as a result of such relief, the proposed development will be enhanced either in terms of visual appearance or through the provision of additional amenities, such as landscaping and buffering, walkways, bicycle racks and/or street furniture; or that there is some clear public or environmental benefit.
 C. That the safe and proper operation of the business will in no way be compromised." Section 185-75.
In Toohey v. Kilday, 415 A.2d 732 (R.I. 1980), our Supreme Court discussed the acceptable standard for granting a special use permit. As a condition precedent, the applicant must establish that the relief sought is "reasonably necessary for the convenience and welfare of *Page 10 
the public. Id. at 737. In order to satisfy the prescribed standard, the applicant must only show that "neither the proposed use nor its locations on the site would have a detrimental effect upon public health, safety, and morals." Id. (quotingHester v. Timothy,108 R.I. 376, 385-86, 275 A.2d 403, 406 (1971)); Nani v. ZoningBoard of Review of Smithfield, 401 R.I. 150, 242 A.2d 403 (1958).
In the instant matter, the property is located in a NB Zone. Private schools are permitted in such zones only by way of a special use permit. Montessori also sought relief from requirements that parking abutting a street be separated from the street by a curb and that a planting strip separate the parking area and street to make such parking area "reasonably attractive." They also sought relief from the ordinance requiring 270 square feet of total parking lot area per parking space.
In its six-page Decision the Board thoroughly addressed the evidence of record in support of its decision. The Board systematically addressed each element of statutory criteria applicable to Montessori's application through eleven findings of fact and eight legal conclusions. First, the Board found that the proposed use is authorized in a NB Zone pursuant to Section 185-8(E) of the Ordinance and that, in light of the Superior Court's previous Decision (overturning the adverse determination from the Planning Board) presumably was consistent with the Comprehensive Plan.
It then found that in accordance with Section 185-78(A) (11), the proposed use requires, and has, nineteen parking spaces. Though the proposed drop-off plan would utilize five of those spaces between 8:00 a.m. and 9:00 a.m., the Board found that the lack of five additional spaces during the morning drop off to be a reasonable accommodation and an insignificant amount of *Page 11 
relief from the nineteen-space requirement. It further found that for the majority of the day, the parking spaces likely would be underutilized.
The Board then found that approval is based upon the site plan first prepared by Mr. Mills in 2006, and updated by Mr. Chaplin in 2009 in response to comments from the Town's Public Work's Director. The Board found that said changes were technical in nature and did not have any substantive effect upon the requested relief.
Thereafter, the Board "recognize[d] Mr. Banyon as an expert in the field of transportation and traffic engineering based on his 25 years of work experience." Decision at 2. As a result the Board "accept[ed] Mr. Banyon's opinion that there will be no negative impact on the traffic in the area . . . [and] that safe and efficient access to the school will likely be provided through the proposed drop-off plan." Id.
In contrast, the Board found Mr. Moitozo's testimony with respect to "Ordinance requirements for parking to be unsupported and outside his area of expertise as a traffic engineer." Id. Although Mr. Moitozo testified that he observed existing traffic circulation and that on one occasion traffic slowed for a few minutes, the Board found that "while there may be an occasional inconvenience to traffic in the area, most of the time the proposed drop-off plan and ingress and egress to the street will function well." Id.;See Toohey, 415 A.2d at 737 (observing that even if there is an increase in traffic it "does not necessarily adversely affect the public convenience and welfare").
With respect to the testimony of Mr. Scotti, the Board found that his "[opinion] that [a] Private School for up to 60 students will have a detrimental effect on the use and enjoyment of the surrounding properties because of traffic conditions to be both outside of his area of expertise and unsupported by competent evidence." Decision at 2-3; See also Toohey,415 A.2d at 737 *Page 12 
(stating that lay judgments "as to whether the [increased] traffic congestion [would constitute a] hazard [under] the zoning ordinance would follow a granting of this application was a subject matter not within the testimonial competence of a witness lacking in expertise"). The Board further rejected Mr. Scotti's opinion as to zoning and Comprehensive Plan consistency as also being outside his area of expertise. It also noted, however, that neither Mr. Scotti nor any of Montessori's witnesses provided evidence that there would be any impact on "property values — an area which would be within his expertise as a real estate appraiser." Decision at 3. The Board then interpreted Section 185-77 of the Ordinance to allow for relief from parking construction standards though a special use permit.
With respect to the requested relief from Article XV, Section 185-79 (D) and (E), which require the parking lot be separated from the street line by a curb at least six inches high and contain a planting strip between the parking area and street, the Board found Mr. Mills' testimony supported a finding that it would be impractical to meet such standards. The Board further found that the public benefit of accommodating an additional sixty young children at the Montessori school "outweighs any benefit which may be achieved in beautifying the parking area." Decision at 3.
The Board then addressed the 175 square-foot shortfall from the 5130 square feet of total parking area required under Section 185-80. It observed that the facility actually would provide the nineteen required spaces. It then found that while the Ordinance includes the use of traffic isles, such traffic isles are not required on the site and that 4,955 square feet would be adequate for the proposed use.
The Board further found that the other requirements of 185-80 had been met because each parking space would be approximately nine feet by eighteen feet as required by the *Page 13 
Ordinance. In addition, the Board found that stacked parking spaces are not prohibited under the Ordinance and that the lack of access isles would only be relevant with respect to the two innermost stacked spaces. Accordingly, the Board found "that a condition of approval requiring that the four stacked spaces be used only by employees is a reasonable accommodation for the lack of access isles to the two spaces . . . and that the adjacent roadways provide sufficient width, low enough volumes, and little conflict for cars turning into the property and are thus a suitable alternative to traffic isles for the majority of the spaces." Id. at 4.
At the hearing, Appellants' counsel argued that additional relief was required from 185-78(B), which requires a three-foot, front-yard setback for parking. However, the Board found that the site plan did not propose parking within the three-foot setback and that the area was not included in the parking surface calculations.
The Board then set forth its conclusions of law by addressing the requirements of Ordinance Sections 185-73 and 185-75 of the Ordinance. It concluded that "evidence in the record and the personal knowledge of the Board members support . . . a need in the community for a Private School with an enrolment of up to 60 students."[7] Id. at 5. It then concluded that the proposed use would be in harmony with the general purposes of the Ordinance because it would "provide a use at an intensity that is appropriate to the Town of Barrington which reflects a current need within the Town." Id. The Board further concluded that "[t]he granting of the special use provides for the orderly growth and development established through the goals and patterns of land use in the Comprehensive Plan . . . [and that] [t]he use of the Premises for a *Page 14 
Private School is in harmony with the Comprehensive Community Plan of the Town as described in the findings above." Id.
In concluding that the special use permit would not result in or create conditions inimical to the public health safety and general welfare, the Board "specifically [found] that the drop-off plan has been successful in the past and will not be impacted by an increase in enrollment." Id. The Board then concluded that granting the special use permit would not substantially or permanently injure appropriate use of the surrounding property because "the area is a mix of residential and commercial . . . and that the Private School use is consistent with the existing development pattern."Id.
The Board next set forth its conclusions of law with respect to the criteria contained in Section 185-75 of the Ordinance. Specifically, it concluded:
 "1. That, based upon the projected use and level of activity for the proposed operation of a Private School, strict application of the parking requirements for this development plan would be excessive.
 2. That, as a result of the granting of this special use permit, there is public benefit [from the] proposed development.
 3. The Board finds that the safe and proper operation of the Private School for 60 students will not be compromised with the grant of this special use permit." Decision at 6.
Thereafter, the Board granted the application under three conditions: the four "stacked" parking places were to be used only by employees; the drop-off plan was to be in effect between eight and nine in the morning and must include employee retrieval of students from the circulating cars; and Montessori must make best efforts to remove snow in a timely manner from parking places and from the edge of a right-of-way.
After reviewing the record, the Court cannot conclude that the Board committed error. The Board's decision was well reasoned and contained sufficient findings of fact and *Page 15 
conclusions of law to support the granting of the special use permit. Ms. Garcia Mills testified from her personal knowledge that there was a need in the Town for an expansion of the existing use and that, in fact, she had students interested and available to substantiate such need. Mr. Banyon testified that the proposed parking and drop-off plan was safe, effective, and would not adversely affect traffic. The Board certainly was entitled to accept this testimony as credible and reliable. Furthermore, while the Board accepted Montessori's experts and evidence, and rejected Plaintiff's experts, it was well within the Board's province to make such findings and this Court should not and will not disturb such credibility determinations.
 IV Conclusion
For all of the foregoing reasons, the Court concludes that the Board's Decision was supported by reliable, probative, and substantial evidence on the record, that it did not constitute an abuse of discretion, nor was it arbitrary, capricious or effected by error of law. Substantial rights of the Appellant have not been prejudiced. Accordingly, the Decision of the Board granting Montessori's application is hereby affirmed. Counsel shall submit an appropriate form of Judgment for entry. Montessori has learned, unfortunately though this long and arduous process, that municipal land use decisions, and the judicial appellate process that may follow, lead to a conclusion that implementation of "the best laid plans" may be delayed for far too long.
[1] Lessor of the subject property.
[2] Owner of the subject property.
[3] A private school is defined as "[a]ny nonpublic nursery school, kindergarten, elementary (1-8), secondary school (9-12)." Section 185-5 of the Barrington Zoning Ordinance.
[4] Sections 185-79 D and E of the Barrington Zoning Ordinance provide, as follows:
 "Site improvement requirements. Off street parking areas for other than single-family residences shall conform to the following requirements:
 . . .
 D. Where the portion of the property used for such parking abuts a street, such portion, excepting approved curb cuts, shall be separated from the street line by a curb at least six inches high.
 E. Any such parking area established after the effective date of this chapter shall contain a planting strip between the parking area and the street approved by the Building Official, and such other landscaping treatment as hereinbefore required to be practicable and to make such parking area reasonably attractive."
[5] Mr. Mills, a professional engineer, is married to Rey-Ann Garcia Mills who is the director and owner of the Montessori school.
[6] Section 185-80 of the Barrington Zoning Ordinance provides, in pertinent part, as follows:
 "Plans and specifications. Plans and specifications for any required parking facility and its access drives shall be submitted at the time of the application for the building permit for the principal use. In allocating land for such a facility, each car space shall have a minimum width of nine feet and a minimum depth of 18 feet and shall be served by adequate, suitable aisles to permit safe and easy access to all spaces. In no case shall the gross area of the required parking facility be less than 270 square feet per car space."
It is undisputed that the nineteen parking spaces required under the amended plan would each have a minimum width of nine feet and a minimum depth of eighteen feet.
[7] Ms. Garcia Mills testified that the school already is prepared to fill many of the additional student spots if the expansion is granted. Ms. Zelenzia testified that there is no full pre-kindergarten provided by the Town of Barrington. She stated that the school offers a beneficial service to working parents by providing full-day childcare.
 *Page 1